EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a teacher tenure case.
*1156 The trial court’s final judgment adequately addresses the issues which have been presented in this appeal and we adopt the reasoning and holding of the circuit court, set out below:
“OPINION AND ORDER
“This case comes on to be reviewed by this Court on the petition filed by the Birmingham Board of Education (‘Board’) for writ of mandamus pursuant to the provisions of § 16-24-38, Alabama Code 1975.
“During the school year 1984-1985, Wayne Stephen Bracey (hereafter ‘Bracey’) was head basketball coach and also taught health and physical education at Huffman High School in the school system under the Board of Education for the City of Birmingham. On November 16, 1984, the Superintendent of Education acting for the Board notified Bracey of the hearing scheduled by the Board to consider the proposed cancellation of his contract of employment. The letter stated:
“ ‘The statutory reasons for the proposed cancellation are incompetency, immorality and other good and just causes. Instances of such are:
“ ‘1. Inflicting corporal punishment on basketball team members in violation of the policies of this school board.
“ ‘2. Holding basketball practice before the allowable date sanctioned by the Alabama High School Athletic Association.’
“The letter also informed Bracey that if he wished to contest the proposed contract cancellation, notice of his intent must be filed with the Board at least five days before the scheduled date of the hearing, which was December 11, 1984.
“Bracey by his attorney did notify the Board of his intention to contest the proposed action, and the hearing was held as scheduled on December 11, 1984. Following the hearing, the Board determined that Bracey was guilty of inflicting corporal punishment and holding basketball practices before the allowable date in violation of the regulations of the Board and the Alabama High School Athletic Association. The Board decided that these violations amounted to immorality, incompetency, and good and just cause for discharge under § 16-24-8, Alabama Code 1975, and terminated Bracey’s contract of employment.
“Bracey then appealed to the Alabama State Tenure Commission (‘Tenure Commission’) pursuant to § 16-24-10, Alabama Code 1975. Section 16-24-10(a), Alabama Code 1975, provides:
“ ‘(a) The action of the employing Board shall be final in its action on cancellation of a teacher’s contract; provided, that such action was in compliance with the provisions of this chapter and was not arbitrarily unjust.’
“The Tenure Commission’s review of the Board’s action is limited then to whether the Board’s action was in compliance with the provisions of the Teacher Tenure Act and whether the Board’s action was arbitrarily unjust.
“Following a hearing of the appeal, the Tenure Commission on February 26, 1985, rendered the following decision:
“ ‘A meeting of the Tenure Commission was held in Montgomery on February 26, 1985, to hear the appeal of Mr. Bracey from his cancellation under § 16-24-8, Code of Alabama, 1975, by the Birmingham Board of Education.
“Upon consideration of the record, as well as briefs submitted and oral argument presented by counsel for both the teacher and the Board, the Tenure Commission finds that the evidence did not support the charges and, therefore, the decision of the Board was arbitrarily unjust.
“The Tenure Commission, therefore, reverses action of the Board in the cancellation of Mr. Bracey.’
“Following the above decision of the Tenure Commission, the Board filed a petition for writ of mandamus in this Court on March 22, 1985, seeking review by this Court pursuant to the provisions of § 16-24-38, Alabama Code 1975, which provides as follows:
*1157 “ ‘The action of the State Tenure Commission in reviewing transfers of teachers or cancellation of teacher contracts, if made in compliance with the provisions of this chapter, and unless unjust, shall be final and conclusive. Whether such action complies with the provisions of this chapter and whether such action is unjust may be reviewed by petition for mandamus filed in the circuit court of the county where said school system is located.’
“Judicial review by this Court of the action taken by the Tenure Commission is limited to two determinations: (1) whether the Tenure Commission’s action was made in compliance with the procedural requirements of the Teacher Tenure law; and (2) whether the Tenure Commission’s action was unjust. No question is raised but that the procedural requirements of the Teacher Tenure law were met by the Tenure Commission. The second issue concerns the question whether the action of the Tenure Commission was unjust. That particular term has been defined in a number of decisions by the appellate courts. See, e.g., State Tenure Comm’n v. Madison Co. Bd. of Educ., 282 Ala. 658, 213 So.2d 823 (1968); State Tenure Comm’n v. Mountain Brook Bd. of Educ., 343 So.2d 522 (Ala.1977); Sumter Co. Bd. of Educ. v. Alabama State Tenure Comm’n, 352 So.2d 1137 (Ala.1977).
“In Sumter Co. Bd. of Educ. v. Alabama State Tenure Comm’n, supra, the Supreme Court of Alabama referred with approval to its earlier decision in State Tenure Comm’n v. Madison Co. Bd. of Educ., supra, as follows:
“ ‘In Madison County Mr. Justice Kohn wrote, “Was the conclusion of the State Tenure Commission unjust? The preponderance of the evidence and the overwhelming weight of the evidence did not warrant such a conclusion.” Thus, it clearly appears that in that decision this Court considered the appellate rule of review to be the “preponderance of the evidence” and the “overwhelming weight of the evidence.”
“ ‘Therefore, we hold that the State Tenure Commission’s conclusions and judgment will not be reversed on appellate review as being unjust unless it is against the preponderance of the evidence and the overwhelming weight of the evidence.’
“The supreme court then reviewed the evidence in Sumter Co. Bd. of Educ. and concluded that there was sufficient evidence to support the conclusion and decision of the Tenure Commission. It affirmed the decision of the Tenure Commission as not ‘unjust.’ The supreme court stated further:
“ ‘... Putting it differently, under our rule of review and taking the finding of fact from the record as contained in the court of civil appeals’ opinion, we cannot say, after a review thereof, that the preponderance of the evidence and the overwhelming weight of the evidence is contrary to the conclusion of the State Tenure Commission.’
“Applying the above statements to the present case now before this Court, the question then presented is whether the action of the Tenure Commission is against the preponderance of the evidence and the overwhelming weight of the evidence. Put another way, the question is whether there was sufficient evidence to support the conclusion and decision of the Tenure Commission.
“It was established without dispute from the evidence presented that Bracey in his position as basketball coach knowingly violated the Board’s policy governing corporal punishment and that he also knowingly violated the rule established by the Alabama High School Athletic Association establishing the date when high schools could commence basketball practice. Bracey testified himself as follows:
“ ‘Q. Were you aware of the rule in the Birmingham school system against corporal punishment?
“ ‘A. Right. I was aware.
“ ‘Q. You were aware of that when you hit these boys on your team?
“‘A. Right.
“ ‘Q. So, you obviously then knew you were violating the rule when you did hit didn’t you?
*1158 “ ‘A. No, not—
“ ‘Q. Well, what did you think you were doing then when you were hitting them?
“ ‘A. Motivating the guys. That wasn’t corporal punishment.
“ ‘Q. I see. You hit, at one time or another, just about everybody on that team, I guess, in practice some time, didn’t you?
“ ‘A. I can’t understand you.
“ ‘Q. At some time or other, I guess, you hit just about everybody on that team, have you not?
‘“A. Uh-huh.
a i * * *
“ ‘Q. And, when you say everybody on the team that Woody was on didn’t look like they were playing up to what they could play, you probably hit everybody on the team didn’t you?
“ ‘A. Right.
“ ‘Q. You didn’t single out Woody for any hits. You hit everybody didn’t you?
‘“A. Right.
“ ‘Q. And, you say you’re sorry you bruised Mr. Woody, did you know you bruised Donald Weber?
“ ‘A. No, I didn’t.
“ ‘Q. I guess you’re sorry you bruised him too, if that be the case?
‘“A. Right.
U ( * * *
“ ‘Q. Did you ever use a paddle?
‘“A. Yes.
“ ‘Q. And, did the paddle break?
“‘A. Yes.
« ( * * *
“ ‘Q. How did it get broken?
“ ‘A. I hit a guy and it broke.’
“At page 140 of the transcript of proceedings before the Board, Bracey testified that he put up the paddle and started using a stick. Bracey had testified earlier that the stick was a pom-pom stick having a diameter approximately that of a pencil.
“Bracey also acknowledged under oath that he started basketball practice in advance of the legal date for basketball practice. Bracey also coached football and was involved in football games on Monday night. He knew that he would be missing basketball practice on Monday and he was starting early to make up for the time that he was missing. Commencing at page 142 of the transcript, Bracey testified:
“ ‘Q. And, the practices you held before the legal date, you asked the players to come there, didn’t you?
“ ‘A. I asked them, right.’
“Referring to an earlier conversation with Ron Ingram, a news reporter for The Birmingham News, Bracey testified concerning an interview as follows:
“ ‘Q. And, when Mr. Ingram asked you in his interview whether or not you were guilty of those charges made against you by the Birmingham Board, that is, that you had administered corporal punishment and had started practice early, he quotes you as saying, “I told them I was guilty on both counts.” Is that what you told Mr. Ingram?
“ ‘A. That’s right. I was as honest as I could be.’
“The Board also received in evidence a copy of the administrative regulation approved by the Superintendent of Education March 29, 1983, regarding corporal punishment. This regulation provides as follows:
“ ‘Under Alabama law, corporal punishment may be administered to students. In the Birmingham schools, it is to be administered by the principal, assistant to the principal or advisor. A teacher may administer corporal punishment with the approval of the principal. Such approval is to be for ad hoc instances only and not for general authorization.
“ ‘In the administration of corporal punishment, the following guidelines shall apply:
“ ‘1. Other methods of discipline should be attempted before corporal punishment is used.
“ ‘2. An attempt should be made to confer with and secure the cooperation of the student’s parent before corporal punishment is administered, but this is not mandatory.
“ ‘3. The student must be provided an opportunity to explain his account of the *1159 situation before the decision is made to administer punishment.
“ ‘4. Corporal punishment must never be administered in the presence of other students.
“ ‘5. If administered, corporal punishment must be moderate and without malice.
“ ‘6. It must cause no physical injury to the student such as bruises, abrasions or other lasting injury.
“ ‘7. A written record of each instance of corporal punishment including the reasons for the punishment must be prepared and kept in the office of the school principal.
“ ‘If a teacher administers corporal punishment to a student, it must be authorized by the principal for a particular incident.
“ ‘When the teacher has received approval from the principal, approval is to be for ad hoc instances only, and not general authorization.
“ ‘It is the testimony of several students, as well as the testimony of Bracey himself, that with knowledge of the administrative regulation regarding corporal punishment, Bracey inflicted corporal punishment on his students in violation of the same. He struck his students with a stick and with a paddle. On some occasions, Bracey struck students with such force that he left a lasting welt or bruise evidenced by photographs admitted in evidence in the proceedings before the Board.
“Bracey also admitted himself that he had scheduled basketball practices in advance of the date established by the Alabama High School Athletic Association. As a result of this infraction, the Director of the Alabama High School Athletic Association assessed a monetary fine of $300.00 and placed Huffman High School on probation for a period of one year. In the letter dated October 29, 1984, the Director stated that the penalty of restrictive probation was a substantially reduced one ‘with an understanding that Huffman High School intends to take disciplinary action against the basketball coach.’
“Bracey has failed to come forward with any defense for his conduct in knowingly violating the regulations of the Board and of the Alabama High School Athletic Association. However, Bracey has testified and submitted testimony by others of violations of Board regulations by other teachers for which no sanctions were imposed. It is not a defense to a charge of violating a rule or a law that others have on other occasions violated rules or laws and have not been penalized for such violations. It is no defense to the charge against Bracey that another coach suffered no sanction or penalty when he had a student return to a basketball game after that same student had been expelled from the game by the referee earlier.
“Bracey also presented evidence that he was a popular coach and teacher. However, his popularity is also irrelevant in the proceeding before the Board to determine whether he knowingly violated Board’s regulations and the rules of the Alabama High School Association.
“The decision of the Alabama State Tenure Commission is against the preponderance of the evidence and the overwhelming weight of the evidence.
“Accordingly, the decision of the Alabama State Tenure Commission is hereby reversed, and the decision of the Birmingham Board of Education is hereby reinstated. All costs of court are taxed against the Alabama State Tenure Commission.”
The above judgment of the learned circuit court is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.