An administrative hearing officer of the Department of Human Resources (DHR) made a finding of indicated child abuse by an elementary school teacher. The Madison County Circuit Court reversed that finding, and DHR appeals.
The school teacher involved, Gwen Nunn Funk, together with a counselor and other school personnel, filed a report with DHR on April 17, 1991, alleging possible child abuse. Funk had administered corporal punishment on April 15, at which time the child (N.F.) reported to Funk that he had been beaten at home by his mother and her boyfriend. Bruises were discovered. Funk concluded that N.F. was being abused at home, and, thereafter, she filed a report with DHR. N.F.'s mother complained that the bruises were caused by Funk in administering corporal punishment. N.F. later admitted, and the hearing officer found, that N.F. had bruised his left hip when he fell while playing outside during the previous weekend.
In August 1991, the investigator reported a finding of indicated child abuse, and DHR issued a letter accusing Funk of indicated child abuse while administering corporal punishment to N.F. Funk requested a hearing, which was conducted for several days. The issues regarding alleged child abuse were presented to a grand jury, which, according to the trial court's judgment, returned a "no bill." Prior to the administrative hearing, the issues were formulated as follows:
 "[O]ne, whether on or about April 11, 1991 and April 15, 1991 Gwen Suzanne Nunn Funk spanked or whipped a child, [N.F.], and bruises were observed.
 "Two, whether the spanking/whipping and the resulting bruises constitute child abuse/neglect under the law and under the regulations of the Department of Human Resources.
 "Finally, . . . whether . . . Funk did, in fact, abuse or neglect a child."
Following extensive testimony from many witnesses, the hearing officer found that the corporal punishment administered by Funk to N.F. on April 11 and April 15, 1991, was excessive, and that it had been administered in clear and intentional violation of the Madison County Board of Education's policy and interpretative guidelines. He further found that the evidence reflected malicious intent by Funk, and that the force used in administering the punishment generated a severe bruise. He determined that the punishment administered by Funk constituted physical abuse. Although not identified and presented as an issue, the hearing officer additionally concluded that Funk was guilty of psychological abuse of N.F.
Following service of the hearing officer's opinion on June 18, 1992, Funk filed a notice of appeal with DHR on July 9, 1992. A petition for review was filed July 27, and a cost bond was filed with the circuit court on July 29, 1992. In November, DHR filed a motion for summary judgment based upon Funk's failure to file a cost bond with DHR at the time of filing the notice of appeal. DHR also filed a motion for summary judgment on the merits of the case in January 1993. Both motions were denied. In May 1993, the trial court issued an extensive order containing extensive findings of fact and conclusions of law. The trial court reversed the decision of the hearing officer. Following the denial of DHR's post-judgment motion, DHR appealed.
DHR contends on appeal (1) that the trial court should have granted summary judgment for DHR on jurisdictional grounds because of Funk's failure to file a cost bond with DHR at the time of filing the notice of appeal; (2) that Funk exceeded her qualified right to administer corporal punishment; and (3) that the decision of DHR's hearing officer was not error. *Page 14 
We first consider whether Funk's failure to file a cost bond with DHR at the time of filing her notice of appeal is fatal to her appeal. At the time when Funk appealed, Ala. Code 1975, § 41-22-20, stated:
 "(b) Except in matters for which judicial review is otherwise provided for by law, all proceedings for review shall be instituted by filing of notice of appeal or review and a cost bond, with the agency. . . ."
". . . .
 "(d) The notice of appeal or review shall be filed within 30 days after the receipt of the notice of or other service of the final decision of the agency upon the petitioner or, if a rehearing is requested under section 41-22-17, within 30 days after the decision thereon. The petition for judicial review in the circuit court shall be filed within 30 days after the filing of the notice of appeal or review. . . ."
DHR submits that the filing of the notice of appeal and the filing of a bond within thirty days are both required for perfection of an appeal pursuant to Ala. Code 1975, §41-22-20(b). DHR cites, inter alia, Baird v. State Dep't ofRevenue, 545 So.2d 804 (Ala.Civ.App. 1989), for the proposition that an appeal is perfected only upon the filing of a cost bond, together with the notice of appeal within the prescribed thirty days. On the other hand, Funk urges that we adopt the reasoning in Mallory v. Alabama Real EstateCommission, 369 So.2d 23 (Ala.Civ.App. 1979), which held that failure to give security for costs is not fatal to appellate jurisdiction, but that it is the timely filing of the notice of appeal that is jurisdictional. To support its position, DHR cites our recent case of Bonner v. State Department of HumanResources, [Ms. AV92000540, October 1, 1993] ___ So.2d ___ (Ala.Civ.App. 1993). We hasten to note that, in Bonner, the appellant filed no bond at any time during the proceedings prior to dismissal. In this case, Funk filed the bond, albeit beyond the 30-day period. Our holding in Baird, supra, construed a statute pertaining to the appeal of a final assessment of taxes pursuant to Ala. Code 1975, § 40-2-22. At the time of our opinion in Baird, the relevant portions of §40-2-22 read as follows:
 "If any taxpayer against whom an assessment is made by the department of revenue . . . is dissatisfied . . ., he may appeal . . . by filing notice of appeal with the secretary of the department of revenue and with the clerk or register of the circuit court of the county to which the appeal shall be taken within 30 days from the date of said final assessment . . . and, in addition thereto, by giving bond conditioned to pay all costs to be filed with and approved by the clerk or register of the court to which the appeal shall be taken. . . ."
This court therefore held that "[a] separate and distinct condition is the payment of the assessment or the filing of a supersedeas bond, unless the exemption therefor under section40-29-23(g) is invoked." Baird at 806. Ala. Code 1975, §40-2-22, was repealed October 1, 1992, and was replaced by the present Ala. Code 1975, § 40-2A-7, wherein our legislature clarified in § 40-2A-7(b)(5)b. that "[i]f the appeal is to circuit court, the taxpayer must, also within the 30-day period allowed for appeal, either (i) pay the assessment plus interest, or (ii) file a supersedeas bond with the court in double the amount of the assessment."
Our research discloses no case interpreting the requirements for perfecting an appeal from the findings of an administrative hearing officer pursuant to § 41-22-20; however, subsection (d), which establishes the thirty-day limitation for the filing of the notice of appeal, makes no mention of the filing of a cost bond as in the revenue statute construed in Baird, supra.
Accordingly, the principle espoused by this court in Luce v.Huddleston, 628 So.2d 819 (Ala.Civ.App. 1993), and inMallory, supra, supports our conclusion that nothing in the above-cited statute suggests that posting security for costs within the statutory time limit is a jurisdictional requirement for perfecting an appeal. There is no dispute that the notice of appeal was filed with DHR within the prescribed time. While the cost bond was filed with the circuit court and approved by the clerk, knowledge of that filing and a copy thereof was later obtained by DHR. Accordingly, we find no error in the trial court's denial of DHR's motion for summary judgment *Page 15 
based upon Funk's failure to file a cost bond with DHR within the 30-day period required for the filing of the notice of appeal. To paraphrase our position in Luce:
 Nothing in this opinion eliminates the requirements of Ala. Code 1975, § 41-22-20(b), that an appellant from an administrative proceeding to circuit court must post security; rather this opinion should be construed to mean that the timely filing of a notice of appeal is jurisdictional.
As to the remaining issues, the genesis for these proceedings is found in the Child Abuse Reporting Act, Ala. Code 1975, §26-14-1, et seq. Ala. Code 1975, § 26-14-3(a) reads:
 "(a) All hospitals, clinics, sanitariums . . . or any other person called upon to render aid or medical assistance to any child, when such child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority."
Section 26-14-7(a) states:
 "(a) the State or County Department of Human Resources shall make a thorough investigation promptly upon either the oral or written report. The primary purpose of such an investigation shall be the protection of the child."
Another mandate of this act is that DHR
 "shall establish a statewide central registry for reports of child abuse and neglect made pursuant to this chapter. The central registry shall contain, but shall not be limited to:
"(1) All information in the written report;
 "(2) Record of the final disposition of the report, including services offered and services accepted;
 "(3) The names and identifying data, dates and circumstances of any persons requesting or receiving information from the registry;
"(4) The plan for rehabilitative treatment; and
 "(5) Any other information which might be helpful in furthering the purposes of this chapter."
Ala. Code 1975, § 26-14-8.
The remaining portion of this section provides the persons to, agencies to, and the conditions upon which this information may be released. Thus, when DHR lists a person's name as a perpetrator in the child abuse and neglect central registry, and intends to release that information to that person's employer or future employer, DHR regulations provide for administrative hearing procedures. (See, e.g., Rule 660-5-34.05(b) of the DHR regulations.)
Indeed, Golden v. Hornsby, 89-H-1266-N (M.D.Ala. July 22, 1990), recognized that a teacher is entitled to due process protection when DHR lists that person's name as a perpetrator in the registry and intends to release that information to that person's employer or prospective employer. Thus, within the framework of this statute, a child abuse report was filed with DHR; DHR determined that Funk was the probable perpetrator; Funk requested an administrative hearing on the determination; a hearing was held and a decision rendered by the DHR hearing officer. Funk appealed that decision to the circuit court.
In a lengthy opinion, reciting the evidence he found probative, the hearing officer concluded:
 "[T]he preponderance of the evidence supports a finding of indicated physical abuse. [N.F.], who was 11 years old at the time of the events set forth at the hearing, was injured by an act or acts of nonaccidental physical abuse. The act or acts of physical abuse were perpetrated by Gwen Nunn Funk in application of corporal punishment.
 "The evidence supports a conclusion that the corporal punishment administered by Ms. Funk against [N.F.] on April 11 and April 15, 1991, was excessive. The punishment was administered in clear and intentional violation of the Madison County Board of Education's policy and the interpretative guidelines of Madison Crossroads School. [N.F.] was paddled three times over two consecutive school days. *Page 16 
On April 15, during the course of the first paddling, Ms. Funk was made aware of [N.F.'s] injury, yet that paddling was completed and another administered that same day with the concerted effort to generate force which would inflict pain. The evidence shows malicious intent. The force used generated a severe bruise.
 "The evidence supports a conclusion that the excessive corporal punishment administered by Ms. Funk against [N.F.] on April 11 and April 15, 1991, constituted physical abuse. The acts produced a severe, swollen bruise which virtually covered the entire left buttock. On April 11 and April 15, 1991, corporal punishment was employed despite Ms. Funk's knowledge of [N.F.'s] allegations of parental abuse, Ms. Funk's own suspicions of neglect, [N.F.'s] history of behavioral problems, and [N.F.'s] assertion to Ms. Funk that he was physically injured.
". . . .
 "Though psychological abuse was not presented as an issue in this case, I take notice of the fact that Ms. Funk interacted with [N.F.] in such a way as to induce psychological and/or emotional injury. The evidence shows Ms. Funk systematically treated [N.F.] differently and unequally in the kinds and frequency of punishment employed. She humiliated [N.F.] by employing a unique method of punishment inherently degrading (the nose in the circle tactic). The methods Ms. Funk employed regularly and frequently to modify [N.F.'s] conduct were overwhelmingly negative. It appears from the evidence that Ms. Funk set out on several occasions to actually provoke the conduct that would generate corporal punishment."
The circuit court correctly noted the limitation of its review. Ala. Code 1975, § 41-22-20, delineates the process by which an aggrieved party may seek judicial review of an agency's final decision and the standard of review to be utilized. Specifically, subsection (k) provides:
 "[T]he agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute."
Thus, the final rulings of a state agency must be reviewed with an attendant presumption of correctness. Judicial review of administrative acts and decisions is limited in scope, and ordinarily, courts will pass only on questions of whether the administrative agency has acted within its constitutional or statutory powers, whether its order or determination is supported by substantial evidence, and whether its action is reasonable and not arbitrary. Parsons v. Board of Registrationfor Professional Engineers Land Surveyors, 451 So.2d 296
(Ala.Civ.App. 1984). Additionally, this court reviews the trial court's ruling on the agency's decision with no presumption of correctness, because the trial court was in no better position to review the order of the agency than this court is. State Health Planning Agency v. Mobile InfirmaryAss'n, 608 So.2d 1372 (Ala.Civ.App. 1992). This presumption of correctness, however, does not apply to the hearing officer's conclusions of law. Harbin v. Alabama Public ServiceCommission, 474 So.2d 63 (Ala. 1985). Moreover, our Supreme Court has consistently held that when a trial court (in this case, the hearing officer) improperly applies the law to the facts, no presumption of correctness exists. See Holland v.City of Alabaster, 566 So.2d 224 (Ala. 1990).
Thus, the dispositive issue before the trial court here was whether the decision of the hearing officer was supported by substantial evidence, or whether it was arbitrary and capricious.
The record in this case discloses that Funk was a fifth-grade teacher at Madison Crossroads School and is considered by her peers to be an excellent teacher. She is considered a disciplinarian; she maintains order in her classroom, and her students are generally well behaved. N.F., who was enrolled in Madison Crossroads School for his fifth-grade year, had a history of poor academic performance and behavioral difficulties. Early in the school year, Funk recognized N.F.'s difficulties, reviewed his records, had conferences with his mother, and created a system for his mother to assist him with homework. As a result, his grades improved. *Page 17 
Testimony indicated that in January 1991, N.F.'s mother failed to pick him up after school, and Funk stayed with N.F. until about 6:00 p.m. When N.F. was unable to locate his mother, Funk took him to her home, where his mother finally picked him up around 9:00 p.m. Because of this incident and N.F.'s comments to Funk concerning his mother's drinking problems, her live-in boyfriend, and his fear of being taken away from his mother, Funk filed a complaint requesting DHR to investigate N.F.'s home life.
N.F.'s conduct continued to be a problem and Funk sought the advice of the school counselor, involved the mother, and kept her informed of N.F.'s daily activities. Various alternatives were implemented in an effort to improve his conduct, such as keeping him after school, sending him to the principal's office, and requiring him to sit next to the teacher's desk. Following a parent-teacher conference, it was decided that when N.F. lied about his work, he would receive a paddling. The record reflected that the mother had resorted to physical punishment at home, and N.F. testified that his mother's live-in boyfriend had spanked him with a belt. Following the parent-teacher conference, Funk paddled N.F. on several occasions, followed by written documentation of the dates and reasons therefor.
The issue that gave rise to these proceedings concerns corporal punishment administered on April 11 and April 15, 1991. On April 11, N.F. received "three licks" from Funk. The punishment was administered in a classroom adjacent to Funk's room, without the witness required by school board policy. The incident was documented in writing by Funk. Later that day, Funk called N.F.'s mother and reported the punishment, and N.F. testified that he received additional corporal punishment at home.
Funk also explored alternatives to corporal punishment, such as requiring N.F. to attend Saturday school. N.F. was to inform Funk on Monday, April 15, whether, in lieu of corporal punishment, he was to go to Saturday school. On Monday, April 15, N.F. told Funk that he was not to go to Saturday school. Later, while reviewing his homework, Funk discovered a note from N.F.'s mother, indicating that the decision for Saturday school would be left to Funk. N.F. was again corporally punished for lying. Again, there was no witness; however, Funk completed written documentation of the punishment. Following the punishment, N.F. indicated that he had a bruise on his hip from falling while playing football the previous weekend. N.F. testified that he had not seen any other bruises on his hip other than from that fall.
On the afternoon of April 15, N.F. was again disciplined; however, the extent of the punishment was greatly disputed. N.F. testified that he thought there was a second corporal punishment, but he could not state how or where the punishment took place. Funk denied a second corporal punishment, and there was no written documentation of such. The hearing officer concluded that the evidence supported a finding that there had been a second corporal punishment on Monday.
That evening, N.F. told his mother about the events of the day, and he was corporally punished by his mother. When asked about his bruise, N.F. replied it came from the corporal punishment on April 11. Later, he told the hearing officer that he thought the bruise came from the April 15 punishment. Until the hearing, N.F. had never accused Funk of causing the bruise, and he had never told his mother or the DHR investigator that he had fallen on Sunday or that he first saw the bruise Sunday night.
The following Tuesday, April 16, the mother angrily confronted Funk and accused her of bruising N.F. Upon seeing the bruise, Funk immediately reported the bruise to the school counselor, and together they generated a report to DHR. DHR commenced an investigation. The Madison County Board of Education initiated its own investigation, determined Funk had failed to follow corporal punishment policy, and issued a written reprimand to her. DHR concluded that the teacher's action indicated she had committed child abuse, and it issued written notification of the conclusion in August 1991 and notified the local district attorney as required. The grand jury was convened and returned a "no bill" after the case was presented. *Page 18 
Upon reviewing the record, the circuit court issued an order, including lengthy finding of facts and conclusions of law, reversing the hearing officer's decision. As to the cause of the bruising, the court noted:
 "Perhaps had [N.F.] told his mother and the DHR investigator that he had bruised himself on Sunday, this extensive hearing process could have been avoided. The Court notes with concern that the DHR investigator never asked [N.F.] about the bruises, where they could have come from, nor who caused them. A thorough investigation should have discovered the bruise from playing football. Having known of the football bruise at the time of the medical evaluation would have allowed a medical examination to determine whether the football fall caused the discoloration in [N.F.'s] buttocks area or whether the paddling or paddlings caused or contributed to the bruising."
Later in its opinion, the circuit court noted that there was no expert or medical testimony presented to show the differences among the bruises allegedly brought about via the Funk paddlings, the football injury, and the family punishment, although N.F. was taken to a doctor for evaluation.
As recognized by the circuit court, the legal standard for corporal punishment of unruly and recalcitrant students was established by our Supreme Court in Suits v. Glover, 260 Ala. 449, 71 So.2d 49 (1954).
 "A schoolmaster is regarded as standing in loco parentis and has the authority to administer moderate correction to pupils under his care. To be guilty of an assault and battery, the teacher must not only inflict on the child immoderate chastisement, but he must do so with legal malice or wicked motives or he must inflict some permanent injury. In determining the reasonableness of the punishment or the extent of malice, proper matters for consideration are the instrument used and the nature of the offense committed by the child, the age and physical condition of the child, and the other attendant circumstances."
Suits, 260 Ala. at 450, 71 So.2d at 50.
In 1977, the Supreme Court of the United States, inIngraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711
(1977), held that the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to traditional corporal punishment of students. In Hale v. Pringle,562 F. Supp. 598 (M.D.Ala. 1983), it was alleged that a student's right to procedural due process was violated by the teacher's failure to follow the school board's policy for administering corporal punishment. The federal district court held that a student has no right under either the federal constitution or federal laws to have corporal punishment administered to him or her in his or her principal's office only, and only when there is an additional adult present to serve as a witness. Most recently, our Supreme Court reaffirmed the Suits holding inDeal v. Hill, 619 So.2d 1347 (Ala. 1993), by stating:
 "Thus, the holding in Suits v. Glover, that a teacher may punish a student unless he 'inflict[s] on the child immoderate chastisement . . . with legal malice or wicked motives or . . . inflicts some permanent injury,' 260 Ala. at 450, 71 So.2d at 50, is the applicable law."
Deal at 1349.
With the above precedent in mind, the circuit court, in the case sub judice, found and concluded:
 "There is no evidence that Ms. Funk sought to intentionally injure [N.F.] by giving him an alleged second paddling on Monday. There is no evidence to support the legal conclusion of any malicious conduct by Ms. Funk. The Administrative Law Judge found malice with the alleged second paddling to support the DHR investigation and without this conclusion the Administrative Law Judge would have had no alternative but to reverse the DHR investigator. The evidence supporting the alleged second paddling is scarce and strongly disputed, however, assuming the evidence to be supportive of the Administrative Law Judge's conclusion that a second paddling occurred, the second paddling episode does not rise to the level the law requires to be considered that the paddling was administered with malice or *Page 19 
with malicious intent. Malice or malicious intent requires a certain degree of conduct and Ms. Funk's actions do not rise to that level. The Administrative Law Judge misapplied the law to the facts in finding malice or malicious intent."
This finding is supported by N.F.'s testimony that Funk's punishment on April 11 and April 15 was not different in force or manner from other punishments he had received, and that Funk did not paddle as hard as the assistant principal did. Additionally, N.F. was extremely fond of Funk, and he requested to be returned to her room for the next year.
Ala. Code 1975, § 26-15-3, provides that a responsible person, such as a teacher, shall, upon conviction, be punished for child abuse if that person, as the trial court notes, tortured, willfully abused, cruelly beat, or otherwise willfully maltreated a child. The trial court then found that "[t]he evidence is insufficient when applied to the law that the actions of this school teacher rises [sic] to the level of child abuse. This decision is due to be reversed."
Our careful review of the record is in complete accord with the circuit court. "Paddling recalcitrant children has long been an acceptable method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children." Hale at 600.
Funk faced a two-pronged attack from DHR, i.e., a charge that she violated the standard established in Suits and a charge of child abuse. The investigation and the evidence presented at the hearing were not sufficient to establish that Funk caused the bruising on N.F.'s buttocks. It is also noteworthy that although N.F.'s mother accused Funk of abusing N.F., the mother did not testify at Funk's hearing. We agree with the sentiments of the trial judge in Hale that even if the teacher had caused the bruises, corporal punishment plus bruises does not equal abuse. The hearing officer in this case concluded that the teacher intentionally provoked N.F. into lying so that she could punish him, relying in part on a parade of student witnesses as to Funk's management of her classroom. This conclusion reflects a lack of understanding of the process of educating young children and maintaining discipline in the classroom. This and similar cases verify the wisdom of the legislature in amending § 26-14-1 et seq., to remove DHR from the investigative process in such cases after February 27, 1994. See 1993 Ala. Acts, No. 93-890; see also Ala. Code 1975, §26-14-3(c).
Adapting the language in Hale at 602, to apply to the case sub judice,
 "However, even if [Funk's] failure to follow board policy on corporal punishment did state a cognizable [charge], the failure to follow the policy would be a violation without an injury, at least, as to [N.F.]. The failure of [Funk] to spank [N.F.] in the principal's office and with another adult present in no manner detracted from the fact that [N.F.] deserved the spanking and the further fact that the spanking was inflicted in a reasonable manner."
For the foregoing reasons, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.