709 So.2d 23 (1997)
John FORRESTER
v.
WVTM TV, Inc.
2960906.
Court of Civil Appeals of Alabama.
November 14, 1997.
Rehearing Denied December 19, 1997.
*24 Robert B. Huie, Birmingham, for appellant.
Gilbert E. Johnston, Jr., and Hollinger F. Barnard of Johnston, Barton, Proctor & Powell, Birmingham, for appellee New World WVTM Communications of Alabama, Inc.
MONROE, Judge.
John Forrester sued the operator of Birmingham television station WVTM TV, Inc., alleging that it had libeled him by broadcasting a videotape that he said labeled him as a child abuser. The trial court entered a summary judgment in favor of the television station. Forrester appealed to the Alabama Supreme Court, which deflected the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala. 1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party's favor. Id.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). To defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The following facts are undisputed. In June 1995, Joe Rogers, a part-time photographer for WVTM, Channel 13, was at a Hueytown Dixie Youth League championship baseball game to watch his nephew play. Rogers was not on duty at the time; however, he did have his camera in the trunk of his car.
The baseball players in the championship game were five- and six-year-olds. Rogers's nephew played for the Braves. During the game, Rogers said, he noticed a man "ragging" on a child who played for the Cubs. He said the man was yelling and fussing at the boy. After witnessing the man's behavior, Rogers said, he got his camera, set it up behind the outfield, and started taping. Several other people also were taping the ball game.
After Rogers began taping, the child who had been scolded was tagged out between bases. When the boy left the field, Rogers continued to tape as the man, later identified as John Forrester, grabbed him, shook him, and slapped him twice in the face. Rogers was appalled at the man's behavior and "thought the public needed to know about it." He showed the tape to his supervisor the next day, and his supervisor asked him to bring the tape to the station's morning meeting for review. WVTM then decided to do a story on the pressure adults put on children in sports, using the tape as part of the story. Rogers and two reporters working on the story, Mary Beth Cusack and Jason Feinberg, made several attempts to identify and contact the man. Finally, one of the Cubs coaches identified the man as Forrester. The child he slapped was his son. Feinberg made repeated calls to Forrester's home, but the calls were never returned.
The various people contacted by reporters told Forrester that they were looking for him, but he made no attempt to talk with reporters. He also saw a promo for the story, which contained the video of him slapping his son, but still he did not contact the television station. Forrester, who was not the team's coach, testified that he met with the Hueytown Dixie Youth League Board the Sunday before WVTM broadcast the story. He said board members, none of whom had seen the promo for the WVTM story, asked him to explain what had happened between him and the boy at the ballpark. Forrester *25 said he told them that his son "was basically throwing a temper tantrum and thatyou know, I popped him trying to stop his temper tantrum." The board initially suspended Forrester for an indefinite time, but later, Forrester said he had been suspended for the first two games of the 1996 season, meaning he could not attend the games.
On Tuesday, June 13, WVTM broadcast a feature story titled, "It's How You Play the Game," during its 6 p.m. and 10 p.m. reports. The story was rebroadcast during the midday reports on June 14 and 15. For the next two weeks, viewer comments on the story were aired during a weekly segment called, "It's Your Call."
The raw tape shows the child being tagged out, and as he runs to the dugout he is obviously upset. He takes off his batting helmet and looks as if he is about to cry. Forrester grabs him and slaps him in the face; they take a few steps, with Forrester still holding onto the boy, and then Forrester slaps him again and gestures toward the playing field. The boy looks scared throughout the episode.
In the WVTM broadcast, the boy and the man are "clouded" over so that their identities remain hidden, and the actual slaps are hard to distinguish. The news anchors and reporters tell viewers that the man slapped the child twice. Forrester and his son are never identified by name in the broadcast. The station uses the episode to launch a broader discussion about the pressures adults put on children in sports.
Forrester claims that material issues of genuine fact exist so as to preclude a summary judgment. He contends that "[t]he broadcast as a whole charged John Forrester with child abuse, a felony," and that "false imputation of the commission of a felony is defamatory per se." That contention is not supported by the evidence. A close review of the broadcast reveals that it never charges Forrester with anything. The broadcast as a whole is not about Forrester, despite his contention to the contrary. In fact, the broadcast shows other parents at the same ball game getting into a fight in the parking lot after the game, and the story discusses those actions at length. This case does not involve false imputation of a felony.
To prevail in a defamation action, the plaintiff must show:
"1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."
McCaig v. Talladega Publishing Co., 544 So.2d 875, 877 (Ala.1989) (emphasis in the original).
In other words, to establish a prima facie case of defamation, Forrester has to show that WVTM was at least negligent in publishing a false and defamatory statement concerning Forrester. Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085 (Ala.1988). We reiterate that the images of Forrester and his son were "clouded" on the WVTM broadcast, and the two are never identified by name. We fail to see how the television station could defame a "blue dot."
Regardless, in deciding whether a person has been defamed, the trial court must first determine whether the plaintiff is a public figure or a private individual. Ex parte Rudder, 507 So.2d 411, 416 (Ala.1987). There is no dispute that Forrester is a private individual. If a private individual is alleging defamation, then the trial court must determine whether the alleged defamatory speech involves a matter of public concern. Id., citing Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).
"The recent United States Supreme Court opinion in Hepps holds that a private figure plaintiff who seeks to recover damages against a media defendant for defamatory speech on a matter of public concern must also show that the statements at issue are false. The Court held that `the common law's rule on falsitythat the defendant must bear the burden of proving truth must similarly fall here to a constitutional requirement that the plaintiff bear the *26 burden of showing falsity, as well as fault, before recovering damages.' 475 U.S. at [776], 106 S.Ct. at 1563."
Ex parte Rudder, 507 So.2d 411, 415-16 (Ala. 1987). WVTM did a story about adults putting pressure on children in sports; Forrester slapping his son at a ball game was part of the larger story. In his brief to this court, Forrester contends that "[n]o matter of public concern existed," and he argues that "[a] parent disciplining his child is not of public concern." We disagree. Clearly, the community has an interest in the welfare of its children, especially at community-sponsored events. And the purpose of the story, whether adults are putting too much pressure on children in sports, emphasizing to five- and six-year-olds the importance of winning over the importance of enjoying the game and developing good sportsmanship, is without a doubt a matter of public concern.
Because this case involves a matter of public concern, the burden is on Forrester to show that the broadcast was false. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). The video aired by WVTM truthfully depicts what occurred at the ball field. The video and the reporters' corresponding explanations as to what occurred are true in their most literal sense. The station never accused Forrester of child abuse. Forrester failed to present any evidence that the broadcast was false. While he may disagree with the station's decision to air his obnoxious behavior at the ball field, the episode served as an example of a matter of public concern and was therefore a legitimate news story. WVTM is not to blame for Forrester's embarrassment over his own actions.
"Truth is always an absolute defense to any action for libel or slander." McCaig v. Talladega Publishing Co., 544 So.2d 875, 879 (Ala.1989). Because the broadcast was true, as a matter of law it was not capable of having a defamatory meaning. See id.
Forrester is a private individual, but his behaviorslapping his six-year-old son at a little league baseball game in full view of the publicbrought up a matter of public concern, i.e., whether adults put too much pressure on children in sports. Therefore, Forrester bore the burden of showing that the broadcast was false. He failed to present substantial evidence that the broadcast or any statements made during the broadcast were false; therefore, the trial court properly entered the summary judgment in favor of WVTM.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I dissent. I believe Forrester's submission in opposition to the station's motion for summary judgment presented substantial evidence creating material questions of fact on all the elements of a defamation action against a media defendant by a private-figure plaintiff: (1) publication (2) of a false and defamatory statement (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury.
The first element, publication, is not disputed. The majority focuses only on the second element. It holds that the evidence submitted by the station in its motion for summary judgment established that the broadcast was neither false nor defamatory. I disagree.
I have watched the uncut tape of the baseball game shot by the station's photographer Joe Rogers, as well as the edited version of the tape broadcast by the station. The uncut tape shows Forrester's young son being tagged out at base, snatching off his batting helmet, and storming off the field. The tape then shows Forrester intercepting his son, in the middle of what appears to be a temper tantrum, and slapping the child. The edited version of the broadcast, however, omits the son's earlier conduct and shows only the slapping incident. The broadcast is, therefore, fundamentally false and misleading because it does not include the events leading up to the slapping incident.
*27 Forrester maintains that he slapped his son because the boy was having a temper tantrum, because he was displaying unsportsmanlike conduct, not because he was called out at base. The broadcast, however, implies that Forrester struck the child because the child made an error in play and that Forrester was thereby "putting pressure on the child to play better." The broadcast states that the boy, who was "already in tears" before being slapped, had a "terrified look" on his face during the encounter with his father. The majority apparently agrees, because it says that "[t]he boy looks scared throughout the episode."
In contrast, Forrester testified that the boy was angry, not scared, and that he was "screaming ... mad," not crying. My viewing of the tape leads me to believe that Forrester's characterization of the boy's mental state is probably more accurate than the newscaster's characterization (in part because Forrester knows his child and actually dealt with him on the occasion in question), but in the final analysis I think this question, like many others presented in this case, presents a material question of fact for a jury to resolve.
Deciding that the broadcast dealt with "a matter of public concern" (and therefore that Forrester was required to prove its falsity), the majority portrays the subject of the broadcast in the following rather innocuous terms: "whether adults are putting too much pressure on children in sports, emphasizing to five- and six-year-olds the importance of winning over the importance of enjoying the game and developing good sportsmanship." 709 So.2d at 26. I agree that that topic could be a matter of public concern. However, the majority's description of the subject of the broadcast is incomplete and misleading. The topic of the broadcast is more accurately described (in the words of the broadcaster) as follows: Have parents "lost it" or "gone nuts," over their children's sporting activities, and "are [they] willing to go to extremes"sometimes by abusing their children"to win at all costs"?
The majority does not describe the topic of the broadcast in terms of child abuse because to do so would give credence to Forrester's contention that "[t]he broadcast as a whole charged him with child abuse." The majority decides that that contention is not supported by the evidence. It states that "[a] close review of the broadcast reveals that it never charges Forrester with anything." 709 So.2d at 25. I disagree.
The broadcast includes a statement by a Dr. Vaughan, identified as a child psychologist, who, when told of the Forrester slapping episode (but without having viewed the tape of the episode), says "you don't strike kids, and if you do that's abuse." (Emphasis added.) I believe that statement, alone, "charges Forrester with abuse."
Dr. Vaughan's statement is not the only reference to child abuse in the broadcast. Throughout the segment, the newscasters returned to the subject of child abuse. Birmingham Barracudas quarterback Matt Dunigan was interviewed during the broadcast. He said:
" People are too competitive, and I think it stems from the parents. And the kids get all tight, and then that's when you see a little kid breaking down, because he knows he's, you know, going to get a butt whipping when he gets home because, you know, they didn't win or he didn't do his job right or something."

(Emphasis added.) During the broadcast, DHR child abuse hotline numbers were displayed on the screen and viewers were encouraged to call to report child abuse. Of course, the station never said, "John Forrester is guilty of child abuse," but "the reasonable inferences to be drawn must be determined by [viewing the broadcast] as a whole." Turner v. Devlin, 174 Ariz. 201, 208, 848 P.2d 286, 293 (1993) (defamatory character of statements in a letter must be determined by reading the letter in its entirety).
If the subject of the broadcast is viewed as parental abuse of children for poor athletic performance (a characterization that, I believe, a fair viewing of the edited story compels), then I agree that that topic, too, is a matter of public concern. However, as Forrester's undisputed testimony indicates, he did not slap his son because of the boy's poor athletic performance; he reprimanded the *28 boy for being a bad sport and throwing a temper tantrum.
Whether the allegedly defamatory speech involves a matter of public concern is a question of law. Ex parte Rudder, 507 So.2d 411, 416 (Ala.1987). Although I do not think that slapping a child is the best way to deal with misbehavior, I do not believe that the parental reprimand depicted in this broadcast is a matter of public concern.
"The boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis. Generally, a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published."
Williams v. Continental Airlines, Inc., 943 P.2d 10, 17 (Colo.App.1996). Historically, parents (and those standing in loco parentis) have had the right to discipline their children by means of reasonable and moderate corporal punishment. See Carroll v. State, 370 So.2d 749, 759 (Ala.Crim.App.), cert. denied, 370 So.2d 761 (Ala.1979)("the law authorizes a parent to administer such corporal punishment as the misconduct of the child seems to warrant"). See also State Dep't of Human Resources v. Funk, 651 So.2d 12, 19 (Ala.Civ.App.1994) ("Paddling recalcitrant children has long been an acceptable method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children"); Alabama State Tenure Comm'n v. Birmingham Bd. of Educ., 500 So.2d 1155, 1158 (Ala.Civ.App.1986) ("An attempt should be made to confer with and secure the cooperation of the student's parent before corporal punishment is administered, but this is not mandatory"). Unless we are prepared to abolish a parent's right to use corporal punishment, then I think we must concede that the reprimand depicted in this broadcast was essentially a private matter and not a matter of public concern.
Because I believe Forrester's reprimand of his child was essentially a private matter, and not a matter of public concern, I do not think Forrester had the burden of proving that the broadcast was false. The station cannot have it both ways. It cannot argue, on the one hand, that it did not label Forrester as a child abuser and then contend, on the other hand, that, because the public has an interest in parental abuse of children, its broadcast was on a matter of public concern, and, therefore, Forrester had the burden of proving the story false. In my opinion, the station transformed what was essentially a private matter into a matter of public concern by its own sensationalistic reporting.
"Presumably, the news media generally publish and broadcast only matters that the media believe are of public interest, and the media defendant in every defamation action would therefore argue that the communication was a matter of public interest."
Brown v. Kelly Broadcasting Co., 48 Cal.3d 711, 725, 771 P.2d 406, 413, 257 Cal.Rptr. 708, 715 (1989).
Nevertheless, even assuming that the broadcast was on a matter of public concern and that Forrester had the burden of proving the broadcast false, I believe that Forrester's submission in opposition to the station's motion for summary judgment presented substantial evidence of falsity. Forrester testified that he did not slap his child to punish him for being called out or to pressure him to win the game. That testimony creates an issue of fact as to whether Forrester's being featured by the station as a parent who "put too much pressure on his child to excel in sports" was false.
Furthermore, I believe that Forrester's actions did not, as a matter of law, amount to child abuse under either § 26-16-2(a)(2), Ala. Code 1975, or § 26-15-3, Ala.Code 1975. The former section defines "child abuse" as:
"Harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through nonaccidental physical or mental injury...."
The latter section provides:
"A responsible person, as defined in Section 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 *29 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
The station argues that its broadcasts contained only the opinions of the broadcaster and the persons interviewed and that because those opinions were upon a matter of public concern they are entitled to full constitutional protection. However, a television station "has no constitutional right to repeat false statements simply because they were made ... on a matter of public concern." WKRGTV, Inc. v. Wiley, 495 So.2d 617, 619 (Ala.1986), cert. denied, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987). In Deutcsh v. Birmingham Post Co., 603 So.2d 910 (Ala.1992), cert. denied, 506 U.S. 1052, 113 S.Ct. 976, 122 L.Ed.2d 130 (1993), our supreme court stated:
"`[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.' Milkovich [v. Lorain Journal Co.], 497 U.S. [1,] at 20, 110 S.Ct. [2695,] at 2706, [111 L.Ed.2d 1 (1990)], citing [Philadelphia Newspapers, Inc. v.] Hepps, 475 U.S. 767, 106 S.Ct. 1558[, 89 L.Ed.2d 783 (1986) ]."
Deutcsh, 603 So.2d at 912. When a videotape does not accurately depict what occurred, there is a "provably false factual connotation." See People for Ethical Treatment of Animals v. Bobby Berosini, Ltd., 111 Nev. 615, 895 P.2d 1269, 1272-73 (1995).
The station's narrative summary of the facts in support of its motion for summary judgment contained the following comment by a viewer who had seen the program:
"The child did not start throwing a tantrum until after he was slapped in the face, and I'm amazed that no one jumped over the fence and slapped that man in the face for doing that."
The foregoing comment supports Forrester's contention that improper editing of the tape resulted in a false depiction of what occurred.
"[S]tatements of opinion are actionable when `they imply a false assertion of fact.' Milkovich, 497 U.S. at 18-19, 110 S.Ct. at 2706." Turner v. Devlin, 174 Ariz. at 208, 848 P.2d at 293. In this case, Dr. Vaughan's statement that "you don't strike kids, and if you do that's abuse," is, without question, an assertion of fact. Compare Turner v. Devlin, supra.
In Turner, the Arizona Supreme Court was called upon to decide whether a letter written by a school nurse, accusing a law enforcement officer of conduct "bordering on police brutality," was defamatory. The nurse wrote the letter to protest the officer's gruff and insensitive treatment of a student who was a suspected victim of child abuse. The court determined that the letter was not defamatory because, it determined, the letter writer's use of the term "police brutality" was, in effect, rhetorical hyperbole that referred to the officer's "demeanor" rather than his "physical conduct." The court stated, however, that "if [the allegedly defamatory] statement could reasonably be interpreted as accusing [the officer] of physically abusing the victim, we would have a different case." Turner, 174 Ariz. at 208, 848 P.2d at 293.
Dr. Vaughan did just that here; he accused Forrester of physically abusing his son. Vaughan's "opinion" was not only an assertion of fact but a false assertion of fact. A parent's use of corporal punishment does not make him a child abuser.
The third element Forrester was required to prove is that the defamatory statements were "of and concerning" him. The station argued that this element was not present because Forrester's face was "clouded over" during the broadcast and he was not identifiable. Forrester countered that argument with the testimony of several witnesses who had seen the broadcast and recognized him.
Section 580B, Restatement (Second) of Torts (1976), states that a private plaintiff suing a media defendant for defamation must prove that the defendant was negligent in publishing the alleged defamatory statement. In Mead Corp. v. Hicks, 448 So.2d 308 (Ala. 1983), our supreme court adopted the negligence standard embodied in § 580B. Forrester was therefore required to prove, as the fourth element of his defamation claim, that *30 the station was negligent in airing its broadcast. In Hicks, the court held:
"[D]efendants who make false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff. In determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account the thoroughness of the check that a reasonable person would make before publishing the statement, the nature of the interests that the defendant was seeking to promote in publishing the statement, and the extent of damage to which the statement exposed the plaintiff's reputation. See the comments following Restatement (Second) of Torts § 580B."
Mead Corp. v. Hicks, 448 So.2d at 312 (emphasis added).
The station argued that it adhered to the standard of checking its story for accuracy because, it claimed, its reporters attempted to reach Forrester before the broadcast was aired, but were unable to do so. The reporters stated that they telephoned Forrester during the daytime hours when, they conceded, he would have been at work. They did not state whether they reached an answering machine, or left a message, when they dialed Forrester's telephone number. Forrester testified that, although he never heard from the station before the broadcast, he was aware (through officials at the Dixie Youth Baseball League) that the television reporters were trying to contact him. He did not contact the station because, he said, his attorney advised him not to. Based on the foregoing testimony, I believe there is a material question of fact as to whether the station was negligent in broadcasting its story.
The United States Constitution and the Alabama Constitution specifically reserve to the people important rights that could not survive without a free press to report and expose the violation of those rights. The awesome right of the press to report carries with it the heavy responsibility of the press to ensure that it reports the truth.
From the evidence presented in opposition to the motion for summary judgment, I think a jury would be authorized to conclude that the station made only a half-hearted attempt to talk to Forrester in order to confirm or to deny its version of the story. A jury could also find, from the station's possession of the uncut tape and the station's slipshod attempt to reach Mr. Forrester before it aired the broadcast, that the station knew Forrester's son was misbehaving before he was slapped and that the station did not want to talk to Forrester to learn the truth because the truth would have stopped the broadcast with the childabuse theme.
Forrester clearly established the fifth and final element of his cause of action: that he suffered injury as the result of the station's conduct. He presented evidence as to the impairment of his reputation and as to mental anguish. He also presented evidence that, after the broadcast, his employer discussed with him the advisability of changing job responsibilities because the employer thought it would be better if Forrester had no contact with the public in the aftermath of the broadcast.
I would reverse the summary judgment for the station and remand the cause for trial.