The defendants, Merle Brown and the Mead Corporation, appealed from a judgment based on a jury verdict for $110,000.00, in favor of the plaintiff, R.D. Hicks, in a defamation action.
Hicks was a businessman in the Stevenson community in Jackson County, Alabama. He held garbage collection contracts with Jackson County and with several towns, including Stevenson. He was also responsible for collecting waste at a nuclear power plant. Hicks operated a landfill business and a grocery store, and farmed and raised cattle. Prior to the time when the allegedly slanderous remarks were made, Hicks hauled sawdust and logs for Mead, performed clean up work at Mead's facility in Stevenson, and sometimes furnished labor to Mead from his labor pool.
Hicks was widely perceived as having a wide circle of influential friends. He had a "close relationship" with the mayor and admitted having loaned money to the chief of police. The proceedings during the trial of the instant case were reported on the front page of the local newspaper. Hicks acknowledged that he was sometimes *Page 310 
known around Stevenson as "Boss Hogg."[1] Several witnesses testified that Hicks had a reputation around Stevenson as a bootlegger.
There was a conflict in the testimony as to who originated the accusations which Hicks complained about. The assistant police chief, Richard Brown, testified that on January 25, 1980, Merle Brown came to the police station to obtain a pistol permit. At that time, Merle Brown allegedly told Richard Brown that Hicks and his associates were running a "local mafia," that Hicks had lumber belonging to Mead, that Hicks was using Mead's logs and Mead's employees to operate Hicks's sawmill and that Hicks was a "little Al Capone." Richard Brown went on to testify that Merle told him that he knew the local police could not "finger" Hicks because "he owned the mayor." As a result of Merle Brown's alleged accusations, the Stevenson police conducted an investigation of Hicks which failed to discover any evidence of wrongdoing by Hicks.
Merle Brown, on the other hand, testified that Richard Brown was the source of the allegations. He claimed that Richard Brown told him that Hicks was hauling wood from Mead to Hicks's sawmill and that Richard Brown had cautioned him not to repeat any of the accusations because "Boss Hogg will have me killed . . . he is the mafia in this county."
Regardless of where the accusations originated, Merle Brown repeated them to his supervisors and to other employees at Mead. Although a subsequent inventory revealed a shortage of about one million board feet of lumber at the Mead facility, Mead's auditors did not know whether the shortage resulted from theft, improper bookkeeping procedures, or a combination of problems.
According to Hicks, by the first part of April, talk that Hicks was in the "mafia" was "all over the streets." Hicks denied any wrongdoing and claimed that he was embarrassed and that his reputation was damaged by the "talk" originated by defendant Merle Brown. Hicks produced witnesses who testified that Hicks had had a good reputation prior to the defamatory remarks but that his reputation deteriorated afterward.
The defendants raised numerous issues on appeal. Their major contentions involved the following:
(1) whether Hicks was a public or private figure;
(2) whether the trial court charged the jury properly; and
(3) the defendants' claim that the communications complained of were privileged.
Because of the constitutional limitations on defamation actions outlined by the United States Supreme Court in New YorkTimes Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710,11 L.Ed.2d 686 (1964) and its progeny,[2] a determination of whether the plaintiff is a public official, a public figure, or a private figure is necessary to determine the plaintiff's standard of proof. If the plaintiff is a public figure or public official, he must prove that the defendant had actual knowledge of the falsity of the defamatory statement or that he made the statement with reckless disregard for its truth or falsity. NewYork Times Co. v. Sullivan, supra, at 279-280, 84 S.Ct. at 725. A determination of the plaintiff's status is a question of law which must be decided by the trial court prior to charging the jury, so that the court can instruct the jury as to the applicable standard of proof. Mobile Press Register, Inc. v.Faulkner, 372 So.2d 1282, 1285 (Ala. 1979). *Page 311 
On appeal the defendants argue that the trial court failed to make a determination as to the plaintiff's status. It is apparent, however, from the trial court's charge to the jury that it considered Hicks to be a private figure.
Public figures are those who gain notoriety due to their achievements or who seek the public's attention with vigor and success. Gertz v. Robert Welch, Inc., 418 U.S. 323, 342,94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). There are two classes of public figures. Some individuals achieve such pervasive fame or notoriety that they become public figures for all purposes. Most public figures, however, are those who are involved in particular public controversies and become public figures for a limited range of issues. Gertz, supra, at 351,94 S.Ct. at 3012.
While Hicks may have been in the public eye in regard to certain of his business ventures, such as litigation regarding solid waste disposal at the nuclear power plant, he did not achieve such pervasive fame or notoriety that he could be considered a public figure for all purposes. The allegations of wrongdoing were not made in connection with any matter of public controversy and were not made in connection with Hicks's involvement in local affairs which invited public comment.
 "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."
Gertz, supra, at 352, 94 S.Ct. at 3013.
Having determined that Hicks was a private figure as to the allegedly defamatory statements in question, we turn to the question regarding the jury charge. At the outset we wish to acknowledge the difficulty faced by the trial court in formulating appropriate jury charges in light of the complexities engendered by the constitutional requirements established in New York Times Co. v. Sullivan, supra, and Gertzv. Robert Welch, Inc., supra. In order to ferret out the issues surrounding the jury instructions, it will be necessary to determine the proper standard of proof in a defamation action brought by a private figure.
At common law, a defamatory communication was actionable, subject only to the defenses of truth or privilege. The plaintiff was entitled to recover whether the defendant was reckless in making the defamatory statement or whether he innocently defamed the plaintiff. In New York Times Co. v.Sullivan, supra, the court ruled that the defense of truth, standing alone, was insufficient to protect freedom of speech and of the press. The court based its conclusion on the premise that the first amendment's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open," makes erroneous statements sometimes inevitable. "False speech" on public issues was, therefore, brought within the mantle of constitutional protection. NewYork Times Co. v. Sullivan, supra, at 270-272,84 S.Ct. at 720-21.
Because of the constitutional considerations involved, a public figure or public official must prove that the defamatory statement was made with knowledge of its falsity or with reckless disregard as to its truth or falsity. The same constitutional considerations do not, however, attend statements about private individuals. The Supreme Court has concluded, therefore, that "[s]tates should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood." Gertz, supra, at 346, 94 S.Ct. at 3010. Although the constitutional limitations are not as great with regard to statements about private individuals, Gertz clearly did away with the common law concept of strict liability *Page 312 
for defamatory falsehoods. It held that "[s]tates may define for themselves the appropriate standard of liability for a publisher or broadcaster of [a] defamatory falsehood . . . so long as they do not impose liability without fault." Gertz,supra, at 347, 94 S.Ct. at 3010.
Although Gertz applies on its face only to suits against newspapers and broadcasters, this court has ruled that the decision is applicable to actions against individuals as well.Bryan v. Brown, 339 So.2d 577, 583-584 (Ala. 1976). The reasons for the abolition of strict liability for innocent defamation by the press would seem, a fortiori, to apply to actions against individuals. A professional publisher whose daily operations pose a likelihood of disseminating falsehoods throughout the community should not be held to a lesser standard than an individual.
It is, then, left up to the individual states to adopt a standard of conduct with regard to allegedly defamatory statements by private figures which incorporates the "fault" concept contained in Gertz. The majority of the decisions we found have adopted the negligence standard employed by the Restatement (Second) of Torts § 580 B (1976). See Cahill v.Hawaiian Paradise Park Corp., 56 Haw. 522, 543 P.2d 1356
(1975); Troman v. Wood, 62 Ill.2d 184, 340 N.E.2d 292 (1976);Gobin v. Globe Publishing Co., 216 Kan. 223, 531 P.2d 76
(1975); Jacron Sales Co. v. Sindorf, 276 Md. 580, 350 A.2d 688
(1976); Stone v. Essex County Newspapers, Inc., 367 Mass. 849,330 N.E.2d 161 (1975); Thomas H. Maloney Sons, Inc. v. E.W.Scripps Co., 43 Ohio App.2d 105, 334 N.E.2d 494 (1974), cert. denied, 423 U.S. 883, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975);Martin v. Griffin Television, Inc., 549 P.2d 85 (Okla. 1976);Taskett v. King Broadcasting Co., 86 Wn.2d 439, 546 P.2d 81
(1976); Peagler v. Phoenix Newspapers, Inc., 114 Ariz. 309,560 P.2d 1216 (1977).
Section 580 B states:
 "One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
 "(a) knows that the statement is false and that it defames the other,
 "(b) acts in reckless disregard of these matters, or
 "(c) acts negligently in failing to ascertain them."
Thus, defendants who made false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff. In determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account the thoroughness of the check that a reasonable person would make before publishing the statement, the nature of the interests that the defendant was seeking to promote in publishing the statement, and the extent of damage to which the statement exposed the plaintiff's reputation. See the comments following Restatement (Second) of Torts § 580 B.
In addition to the standard of care with respect to "fault" as mandated by Gertz, the jury instruction in the case subjudice should have taken into account the defendants' claim of privilege. The question of whether an utterance was privileged is a matter of law to be determined by the court. Fulton v.Advertiser Co., 388 So.2d 533, 537 (Ala. 1980). The test for determining whether a privilege exists is as follows:
 "`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes *Page 313 
he is acting in pursuance thereof, although in fact he is mistaken.'"
Fulton, supra at 537.
The defendants argued that their communications were absolutely privileged. We disagree. The only absolutely privileged communications under Alabama law are those made during legislative or judicial proceedings, or contained in legislative acts made under authority of law. Browning v.Birmingham News, 348 So.2d 455, 458 (Ala. 1977).
In the alternative, defendants argued that their statements were protected by a qualified privilege. Statements subject to a qualified privilege are not actionable unless the plaintiff can prove malice on the part of the defendant. If the plaintiff is a public figure or public official he cannot recover absent a showing by clear and convincing evidence that the defendant either knew the publication was false or acted with reckless disregard as to the truth or falsity of the statement.(Sullivan "actual malice"). If the plaintiff is a private figure the plaintiff must show "common law malice" (evidence of ill will, hostility, threats, former libels, etc.). Fulton v.Advertiser Co., supra, at 538.
To recapitulate, the standard of proof with regard to an allegedly defamatory statement as to private figures is as follows: The plaintiff must prove by a preponderance of the evidence that the defendant was negligent in making the statement. The negligence requirement is the minimal threshold of "fault" allowed under the rule established in Gertz v.Robert Welch, Inc. If, however, the communications were protected by a qualified privilege, the plaintiff's burden of proof is higher. He must prove "common law malice" in its traditional sense. See Fulton v. Advertiser Co., supra, at 538.
The trial court in the case at bar improperly failed to make a determination, as a matter of law, as to whether the communications in question were protected by a qualified privilege. The defendants objected to the submission of the question of the existence of privilege to the jury:
 "Your Honor, I would like to say that we appreciate the difficulty of any charge in this case. In this particular charge that you made, Your honor, we would except to the Court's failure to determine as a matter of law that occasions complained about were privileged. . . ."
The communications complained of were made by Merle Brown to the police and to other Mead employees. An employee enjoys a qualified privilege in reporting suspected thefts of his employer's property. Dent v. Smith, 414 So.2d 77 (Ala. 1982). Therefore, the qualified privilege existed as to the accusations of theft made by Merle Brown. Since the communications were privileged, the negligence standard of fault otherwise applicable in actions brought by private figures must give way to the more stringent standard necessary to overcome the privilege. The trial court should have charged the jury that the communications were protected by a qualified privilege and that the plaintiff could prevail only if the jury was reasonably satisfied from the evidence that the statements were the product of actual or express malice in the ordinary sense of the term (i.e. ill will, hostility, etc.).
In light of the trial court's error in submitting the issues of the existence of a privilege to the jury, we reverse and remand the cause for further proceedings.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES, ALMON and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.
[1] An apparent reference to a character on a currently running television show, who is a political "boss" of his small town.
[2] See Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974); Rosenbloom v. Metromedia, Inc.,403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Curtis Publishing Co.v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967): Comment, "Libel Law: A Confused and Meandering State of Affairs," 6 Cum.L.Rev. 667 (1976); Eaton, "The American Law of Defamation Through Gertz v. Robert Welch, Inc., And Beyond: An Analytical Primer," 61 Va.L.Rev. 1349 (1975). *Page 314