Cherita HAYES, Plaintiff,

v.

WAL–MART STORES, INC., Defendant.

Civil Action No. 95–D–1052–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 23, 1996.

Charles Neville Reese, Daleville, AL, for plaintiff.

Barry V. Frederick, Jennifer F. Swain, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Wal–Mart Stores, Inc. motion for summary judgment filed June 26, 1996. The plaintiff failed to respond in opposition. After careful consideration of the relevant case law and the record as a whole, the court finds that the defendant's motion is due to be granted.

## JURISDICTION

This court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $50,000. Personal jurisdiction and venue are uncontested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FACTS

The plaintiff, Cherita Hayes, seeks to hold her former employer, Wal–Mart Stores, Inc. liable for defamation. She asserts that she was defamed by Wal–Mart's District Loss Prevention Manager, Jody Cullifer, who allegedly accused her of theft during a meeting held to investigate an occasion when the plaintiff gave merchandise to a fellow Wal–Mart employee but charged her only for the tax. She also claims that a Wal–Mart manager defamed her by responding to a phony reference check concerning the plaintiff by stating that she would never work for Wal–Mart again.

Ms. Hayes began working for Wal–Mart Supercenter # 734 in Enterprise, Alabama in March, 1993. Depo. of Hayes at 43. She began in the deli department as a cashier and transferred to a front-end cashier position at her own request in May, 1993. *Id.* at 43–44, 54–56 & 59. As front-end cashier, Ms. Hayes was responsible for checking out customers. *Id.* at 61. To ring up merchandise,

Ms. Hayes scanned the bar code on products being purchased. *Id.* at 71. Ms. Hayes direct supervisor was Tonya Barber, the front-end manager. *Id.* at 60; Aff. of Cullifer at ¶ 9.

To monitor and investigate loss prevention and security concerns, Wal–Mart Supercenter # 734 is equipped with video cameras throughout the store. *Id.* at 109–110; Aff. of Cullifer at ¶ 3. Tapes made from these video cameras are reviewed by in-store loss prevention employees, and any suspected loss prevention or security problems are brought to the attention of the District Loss Prevention Manager. Aff. of Cullifer at ¶ 3. The District Loss Prevention Manager is responsible for supervising in-store loss prevention employees as well as monitoring stores for violations of Wal–Mart's loss prevention policies and investigating suspected policy violations and theft. *Id.* at ¶ 2.

Some time in August, 1993, it was brought to the attention of Ms. Cullifer that Cherita Hayes had been videotaped giving merchandise to a fellow Wal–Mart employee without requiring the employee to pay for the merchandise. *Id.* at ¶ 1, 4. The video taped incident occurred on July 29, 1993. Depo. of Hayes at 87; Aff. of Cullifer at ¶ 4.

Ms. Hayes acknowledges that on July 29, 1993, she was working as a cashier and checked out Pastoria Banks, a fellow employee. Depo. of Hayes at 77, 87. Ms. Banks came to Ms. Hayes' check out line with a Sunkist soda and some soap. Depo. of Hayes at 86, 88–89. Ms. Banks had been working at Wal–Mart that day and came to Ms. Hayes' register at the end of her shift. *Id.* at 89. Ms. Hayes rang up the soap and soda, then proceeded to void the price of the soda. Depo. of Hayes at 88, 97. Ms. Hayes asserts that Ms. Banks claimed to have brought the soda from home. *Id.* at 88. Nonetheless, Ms. Hayes did not attempt to verify that the soda was not store merchandise prior to voiding the sale. *Id.* at 90.

After voiding the soda sale, Ms. Hayes totaled Ms. Banks' purchase at $1.97, then added tax of $0.16 for a total of $2.12. Depo. of Hayes at 97. She then voided the price of the soap, $1.97, purportedly because Ms.

Banks informed her that the soap had been marked down to $1.37. *Id.* at 90–92, 97 & 98. Ms. Hayes claims that a nearby cashier named Regina stated that the soap was priced at $1.37. Depo. of Hayes at 91–92. Although Ms. Hayes asserts that it was Wal–Mart policy to have an employee known as a "skater" check the price of an item asserted to be on sale, she did not do this in Ms. Banks' case. *Id.* at 74 & 91. She claims that the "skaters" were gone for the night but admits that no one actually checked the price of the soap. *Id.* at 74, 91 & 93.

After voiding the price of the soap, Ms. Hayes used a "price override" function on the cash register to input what she claims was the reduced price of the soap, $1.37. *Id.* at 93–94 & 98. Ms. Hayes believes that the cash register automatically voided out the $1.37 by virtue of the "price override" function. *Id.* at 98. She then assessed tax at $0.11 and proceeded to give Ms. Banks the soap while charging her only $0.11 for tax. *Id.* at 98.

Although Wal–Mart's "Scanning Credibility Program," in effect at the time, directed that customers receive an item under $3.00 for free if the item is scanned at an incorrect price, this policy did not apply to Wal–Mart employees. *Id.* at 75–76; Aff. of Cullifer at ¶ 6. Because Ms. Banks was a Wal–Mart employee, she should not have received the soap for free even if it had scanned at an incorrect price. *Id.* at 115; Aff. of Cullifer at ¶ 6. Ms. Hayes admits that she violated Wal–Mart policy when she used the "price override" key to give Ms. Banks the soap. *Id.* at 115 & 129–30.

Even if Ms. Banks had not been a Wal–Mart employee, Ms. Hayes violated several Wal–Mart policies when she used the "price override" function with respect to Ms. Banks' purchases on July 29, 1993. Aff. of Cullifer at ¶ 7. Ms. Hayes did not check the price of the soap before using the "price override" function. Dep. of Hayes at 74, 91 & 93; Aff. of Cullifer at ¶ 7. In addition, Wal–Mart policy required cashiers to fill out a "Customer Satisfaction Card" whenever an item scanned at the incorrect price. Id. at 107, Ex. 14. A "Customer Satisfaction Card" was also required when a cashier utilized the "price override" function. Id. at 107, Ex. 14. Although she was aware that a "Customer Satisfaction Card" was required in both circumstances, Ms. Hayes did not fill out such a card when she voided the soda sale and utilized the "price override" function as to the soap. Id. at 107 & 109; Aff. of Cullifer at ¶ 7.

Wal–Mart policy also required associates to get management approval for all error corrections, voids or markdowns. Ex. 17; Aff. of Cullifer at ¶ 7. Ms. Hayes does not dispute that this was Wal–Mart's policy but claims that she believed it necessary to get management approval only for "major voids" or when the associate was unable to void a sale without help. Depo. of Hayes at 176–77.

Finally, Ms. Hayes was also aware that, according to Wal–Mart policy, she should never put herself in a position where her integrity could be questioned. *Id.* at 101. As she acknowledges, Wal–Mart's loss prevention policy is to terminate employees in the event of dishonesty or violations of employee integrity or loss prevention policies. *Id.* at 101–102; Aff. of Cullifer at ¶ 8.

After viewing the videotape of the transaction between Ms. Hayes and Ms. Banks, Mr. Cullifer obtained the cash register tape for the transaction and verified that Ms. Hayes had given Ms. Banks the soda and soap, charging her for only tax on part of the price of the soap. *Id.* at 87, Ex. 11; Aff. of Cullifer at ¶ 5. Because Ms. Hayes had violated several Wal–Mart policies related to employee integrity and scanning credibility, and because Mr. Cullifer believed that she had given merchandise to another associate, an investigatory meeting was held in late August or early September, 1993. *Id.* at 27 & 117; Aff. of Cullifer at ¶ 9.

The meeting included Mr. Cullifer, Ms. Hayes and Ms. Barber. *Id.* at 116–17; Aff. of Cullifer at ¶ 9. Ms. Barber was Ms. Hayes' direct supervisor and was thus responsible for implementing any disciplinary action necessary against Ms. Hayes. *Id.* at 59–60; Aff. of Cullifer at ¶ 9. Moreover, Wal–Mart policy required the presence of a female witness at any investigatory meeting involving a female employee. Aff. of Cullifer

at ¶ 9. The in-store loss prevention employee who had reported the incident to Mr. Cullifer was also at the meeting pursuant to his duties as a Wal–Mart security employee. Depo. of Hayes at 116 & 121; Aff. of Cullifer at ¶ 9. During the meeting, Ms. Hayes was informed by Mr. Cullifer that she was terminated for giving a discount she should not have given. Depo. of Hayes at 117–19 & 129–30.

Ms. Hayes claims that she was defamed by Mr. Cullifer during the meeting when he allegedly accused her of being a thief. Depo. of Hayes at 131–32 & 152–53. Ms. Hayes acknowledges that Mr. Cullifer believed that she had attempted to help Ms. Banks steal merchandise, and further acknowledges that she had in fact violated Wal–Mart policy by giving Ms. Banks merchandise for which she had paid only tax. *Id.* at 115, 129–30, 138, 152 & 172. She also acknowledges that if Mr. Cullifer believed she had attempted to help Ms. Banks steal, it was reasonable for Mr. Cullifer to terminate her. *Id.* at 138–39.

Although she did not claim malice in her complaint, Ms. Hayes asserted at her deposition that Mr. Cullifer's alleged accusation was malicious. *Id.* at 152; Pl.'s Compl. She bases this assertion solely on his "attitude." *Id.* at 152. Nonetheless, Ms. Hayes admits that Mr. Cullifer did not accuse her of theft in front of anyone other than her manager, Tonya Barber, and the security employee. *Id.* at 140–41. She does not assert that Mr. Cullifer told any other person that she was a thief, nor did Mr. Cullifer tell anyone the reason for her termination. *Id.* Mr. Cullifer had never met Ms. Hayes prior to the meeting in which she was terminated. Aff. of Cullifer at ¶ 10.

Ms. Hayes also asserts that she was defamed by a Wal–Mart "supervisor" who she can identify only as Mark. Depo. of Hayes at 142; Pl.'s Compl. After her termination from Wal–Mart, she went to work at Wendy's in Enterprise, Alabama. *Id.* at 10–11, 27. While working at Wendy's, Ms. Hayes asked her Wendy's shift supervisor, Eric Douglas, to call Wal–Mart on the pretense of obtaining a reference concerning her employment at Wal–Mart. *Id.* at 143–46 & 149. Ms. Hayes admits that she just really wanted

to hear Wal–Mart's response. *Id.* at 146. According to Ms. Hayes, Mr. Douglas told her that a "supervisor" named Mark told him that Ms. Hayes would never work at Wal–Mart again. Depo. of Hayes at 143, 145 & 147. Mark did not tell Ms. Douglas that Ms. Hayes was a thief or that she had been terminated for giving away merchandise in violation of Wal–Mart policy. *Id.* at 142, 143 & 148.

Ms. Hayes admits that she had been designated "no rehire" upon her termination from Wal–Mart and that nothing Mark told Mr. Douglas was untrue. *Id.* at 139–40, 145–46 & 169, Ex. 16. She does not know whether Mark's statement was intended to be malicious or whether Mark bore her any ill will, and acknowledges that Mark may have simply told Mr. Douglas that she would not work at Wal–Mart again because she had been designated "no rehire." *Id.* at 150 & 152. In fact, Ms. Hayes is not even sure whether Mark knew the reason for her termination. *Id.* at 150.

Ms. Hayes was never refused any employment based on the alleged statements made by Mr. Cullifer and Mark. *Id.* at 163–64. Indeed, she admits that she suffered no damages except hurt feelings as a result of Mark's alleged statement to Mr. Douglas, and that the only damages she suffered as a result of Mr. Cullifer's alleged accusation was the loss of her job, which would have occurred irrespective of any statement made by Mr. Cullifer. Depo. of Hayes at 170–71.

## DISCUSSION

### I. Alleged Defamation by Jody Cullifer

#### A. Publication

■ Wal–Mart contends that it is entitled to summary judgment on Ms. Hayes' defamation claim as it relates to the alleged accusation by Mr. Cullifer because there was no publication. To sustain an action for slander, the plaintiff must show that the "alleged defamatory matter was published," Ala.Code § 6–5–182, "by proof of communication of the defamatory matter to someone other than [herself]." *K–Mart Corp. v. Pendergrass,* 494 So.2d 600 (Ala.1986); *see Nelson v. La-*

*peyrouse Grain Corp.,* 534 So.2d 1085 (Ala. 1988).

The alleged accusation by Mr. Cullifer is subject to a "special" publication rule applicable to corporations, as described by the Alabama Supreme Court in *Burney v. Southern Railway Co.,* 276 Ala. 637, 165 So.2d 726 (1964) and *McDaniel v. Crescent Motors, Inc.,* 249 Ala. 330, 31 So.2d 343 (1947). In *McDaniel,* the Court stated:

> The fact that the words were spoken by one of defendant's managers in the presence of two other managers in the course of transacting defendant's business, and in the line of their duty as officers of defendant, all in respect to defendant's relations with plaintiff as an employee against whom complaint had been made in connection with his duties as an employee and in respect to that complaint does not alone make the conversation public so as to constitute slander.

31 So.2d at 345. The holding in *McDaniel* was reiterated in *Burney,* where the Court went on to hold:

> [W]here [a] letter is dictated by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation and the letter is sent to another fellow employee and it is in respect to that employee's relations with the corporation, there is not sufficient publication to sustain an action for libel.

165 So.2d at 730. More recently, the Alabama Supreme Court has reaffirmed that communications among the managerial personnel of a corporation about the company's business do not constitute a publication. *See Dixon v. Economy Co.,* 477 So.2d 353, 354 (Ala.1985); *K–Mart Corp. v. Pendergrass,* 494 So.2d at 603.

Here, Wal–Mart argues that, because Mr. Cullifer was the District Loss Prevention Manager charged with investigating loss prevention and security problems, and Ms. Barber was the plaintiff's supervisor, the alleged communication by Mr. Cullifer in Ms. Barber's presence did not constitute "publication." *See K–Mart,* 494 So.2d at 604 (no "publication" where communication between

district loss control director and store manager to the effect that the plaintiff had been terminated for misappropriation was between managerial employees and concerned corporate business). In addition, the fact that a loss prevention associate was also present does not change the result. In *Nelson v. Lapeyrouse Grain Corp.,* 534 So.2d 1085 (Ala.1988), the plaintiff appealed an order granting summary judgment in favor of his former employer on a defamation claim. One of the issues on appeal was whether accusations of theft made by a management employee in the presence of a non-managerial employee during the course of an investigation of the plaintiff constituted a defamatory publication. Noting that the defendant was in the business of buying and selling grain and that investigating shortages of grain therefore concerned corporate business, the Supreme Court of Alabama held that the corporate defendant was not liable for the management employee's alleged defamatory communications to other corporate employees during the course of the theft investigation. The Court stated:

> As long as a communication to a non-managerial employee falls within the proper scope of that employee's knowledge or duties, the *McDaniel/Burney* rule applies to non-managerial employees as well as to managerial employees. A corporation can act only through its servants, agents, or employees ... and when officers and employees of a corporation act within the scope of their employment and within the line and scope of their duties, they are not third persons vis-a-vis the corporation.

*Lapeyrouse,* 534 So.2d at 1093 (citations omitted).

In light of the foregoing authority, the court finds that the investigatory meeting and communications concerning suspected theft by Ms. Hayes clearly fall within the scope of a loss prevention employee's knowledge and duties. Indeed, the loss prevention employee was the person who initially brought the incident to the attention of Mr. Cullifer. Because the alleged communication by Mr. Cullifer took place only in the presence of the plaintiff's supervisor and a loss prevention employee whose duties included

enforcing Wal–Mart's policies concerning theft, the court finds that the communication was not published. *Nelson,* 534 So.2d at 1093; *Burks v. Pickwick Hotel,* 607 So.2d 187 (Ala.1992) (communications published only to a few employees and only to the extent necessary to investigate the plaintiff's behavior were not published to a "third party" and thus could not be defamatory).

■ There can be no defamation based on an unpublished communication. *Willis v. Demopolis Nursing Home, Inc.,* 336 So.2d 1117 (Ala.1976) ("If there is no publication, there is no defamation"); *K–Mart Corporation, Inc. v. Pendergrass,* 494 So.2d at 602 ("Publication of the alleged defamatory matter is, of course, an element of a plaintiff's prima facie defamation case"); *Burks v. Pickwick,* 607 So.2d at 189 (affirming summary judgment for employer since allegedly defamatory communications were made only to corporate employees and thus were not published). Consequently, the court finds that Wal–Mart is entitled to summary judgment as to Mr. Cullifer's alleged defamation.

### B. Qualified Privilege

■ Alternatively, the court finds that Wal–Mart is entitled to summary judgment because Mr. Cullifer's statement was protected by a qualified privilege. The test for determining whether a conditional or qualified privilege exists is as follows:

> Where a party makes a communication, and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice.... The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.

*Willis v. Demopolis Nursing Home, Inc.,* 336 So.2d 1117 (Ala.1976) (quoting *Berry v. City*

*of New York Ins. Co.,* 210 Ala. 369, 98 So. 290 (1923) (internal quotations omitted)).

Mr. Cullifer, Ms. Barber and the security employee all had a duty to Wal–Mart to investigate the policy violations and suspected theft by the plaintiff. Indeed, the Supreme Court of Alabama has made clear that an employee enjoys a qualified privilege in reporting suspected thefts of his employer's property. *Dent v. Smith,* 414 So.2d 77 (Ala. 1982). More to the point, accusations of theft made by one employee about another employee in the presence of other interested employees or to law enforcement are unquestionably subject to a qualified privilege. *See Mead Corp. v. Hicks,* 448 So.2d 308 (Ala. 1983) (accusations complained of were made by a corporate employee to the police and to other employees and were thus subject to a qualified privilege). Thus, the court finds that Mr. Cullifer's alleged accusation about the plaintiff in the presence of Ms. Barber and the security employee was a privileged communication.

■ Because a qualified privilege exists, the alleged communication by Mr. Cullifer is only actionable if there was actual malice. *Dent,* 414 So.2d at 78; *Willis,* 336 So.2d at 1120. The burden is on the plaintiff to prove actual malice. *Dent,* 414 So.2d at 78–79.

■ In this context, "actual malice" means common law malice, which "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like ... or by the violence of the defendant's language, the mode and extent of publication, and the like." *Fulton v. Advertiser Co.,* 388 So.2d 533, 538 (Ala.1980), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981); *see also Barnett v. Mobile County Personnel Bd.,* 536 So.2d 46, 54 (Ala.1988). Common law malice also includes defamatory statements made with knowledge of their falsity or with reckless disregard as to whether they are false. *Barnett,* 536 So.2d at 54.

There is simply no evidence before the court that the alleged accusation by Mr. Cullifer was made with actual malice. The plaintiff admits that she violated Wal–Mart policy, and it is undisputed that Mr. Cullifer

believed in good faith that the plaintiff had attempted to help Ms. Banks steal Wal–Mart merchandise. While Ms. Hayes asserts that the alleged communication was malicious because of Mr. Cullifer's "attitude," she offers no evidence to support this assertion. Indeed, the court finds that Mr. Cullifer could not have bore Ms. Hayes any "previous ill will, hostility, threats, rivalry, other actions, libels or slanders and the like" since he did not even know her prior to the meeting in which the accusation was allegedly made. *See Dent,* 414 So.2d at 79 (no evidence of malice and summary judgment affirmed where employee who reported suspected theft scarcely knew the plaintiff and no evidence that he bore any ill will towards him). Based on the foregoing, the court finds that Wal–Mart's motion for summary judgment is due to be granted concerning Ms. Hayes' claim that Mr. Cullifer made defamatory statements.

## II.   Alleged Defamation by "Mark"

### A.   False Statement.

■ The court finds that Ms. Hayes' attempt to base a defamation claim on the alleged communication by Mark must fail because, even overlooking the fact that Ms. Hayes has presented no admissible evidence of any such communication, it was not defamatory as a matter of law. Ms. Hayes asserts only that Mark told her shift supervisor at Wendy's that Ms. Hayes would never work at Wal–Mart again. Ms. Hayes admits that she could not work at Wal–Mart again because she had been designated no rehire. Therefore, Mark's statement to Mr. Douglas was true.

■ The first element of a cause of action for defamation is a false statement. *Tidwell v. Winn–Dixie, Inc.,* 502 So.2d 747 (Ala. 1987); *Mead Corp. v. Hicks,* 448 So.2d 308 (Ala.1983). Because Ms. Hayes admits that Mark's statement was true, it cannot support a defamation claim. *Tidwell,* 502 So.2d at 748 (affirming directed verdict for defendant on defamation claim where plaintiff admitted the substance of the statement).

### B.   Defamatory Meaning

■ Even if the communication by Mark was not true, the court finds that it could not support a defamation claim because it is not capable of a defamatory meaning. A communication is considered defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Harris v. School Annual Publishing Co.,* 466 So.2d 963, 964 (Ala.1985) (quoting *Restatement (Second) of Torts* § 559 (1976)). "Whether the communication is reasonably capable of a defamatory meaning is a question, in the first instance, for the court." *Id.* (quoting *Albert Miller & Co. v. Corte,* 107 F.2d 432 (5th Cir.1939) (applying Alabama law), *cert. denied,* 309 U.S. 688, 60 S.Ct. 890, 84 L.Ed. 1031 (1940); *Restatement, supra,* § 614, comment b. Ms. Hayes admits that Mark did not tell Mr. Douglas that she had stolen from Wal–Mart, that she had been terminated for suspected theft, or that she had violated Wal–Mart policy. She alleges only that Mark told Mr. Douglas that she would not work at Wal–Mart again. The court finds that such a statement is not reasonably capable of a defamatory meaning. It does not impugn her reputation in any way. *See Harris,* 466 So.2d at 964–65 (affirming summary judgment because communication not reasonably capable of defamatory meaning).

### C.   Qualified Privilege

■ Even if Mark's statement was capable of defamatory meaning, the court finds that Wal–Mart is entitled to summary judgment since the communication was protected by a qualified privilege and there is no evidence of malice. As discussed previously, where a party makes a communication prompted by a duty owed either to the public or a third party, and the communication is one in which the parties have an interest, the communication is privileged if made in good faith and without actual malice. *See supra* 14; *see also Brown v. Chem Haulers, Inc.,* 402 So.2d 887, 891 (Ala.1981).

It is well established that communications made to prospective employers by an agent of the plaintiff's former employer, such as

Mark's alleged statement here, are protected by a qualified privilege. *See Clark v. America's First Credit Union,* 585 So.2d 1367 (Ala.1991) (statements made in response to inquiry from a prospective employer concerning plaintiff's former employment were privileged); *Gore v. Health–Tex, Inc.,* 567 So.2d 1307 (Ala.1990) ("any publication made between a previous employer and a prospective employer is protected by a conditional privilege"); *Brown,* 402 So.2d at 891 (even if defendant told plaintiff's prospective employers that the plaintiff's negligence was the underlying cause of the accident, such communication was conditionally privileged because it was made by a party with an interest "made to another party with a corresponding interest").

■ It is also well established that absent a showing of malice, an action for defamation will not lie where there is a qualified privilege. *Gore,* 567 So.2d at 1308; *Willis,* 336 So.2d at 1120. Ms. Hayes admits that she does not know whether Mark had any malicious intent or he bore her any ill will. She even acknowledges that Mark may have merely told Mr. Douglas that she would not work at Wal–Mart again because she had been designated "no rehire" on her exit interview form. Because Ms. Hayes neither asserts nor supports any claim of malice on the part of Mark, the court finds that Wal–Mart is entitled to summary judgment as to her defamation claim based on his alleged communication.

**D. Damages**

■ In any event, the alleged communication by Mark caused Ms. Hayes no damage and thus is not actionable. In the absence of language that is defamatory per se, a plaintiff must allege and prove special damages resulting from the defamation. *Clark v. America's First Credit Union,* 585 So.2d 1367 (Ala.1991); *Myers v. Mobile Press Register, Inc.,* 266 Ala. 508, 97 So.2d 819, 821 (1957).

The alleged statement by Mark was made after Ms. Hayes had already been hired by Wendy's, in response to a phony reference check initiated by Ms. Hayes. More importantly, Ms. Hayes admits that she suffered no damages other than hurt feelings as a result of Mark's alleged communication. Because she neither asserts nor has evidence of any special damages resulting from Mark's alleged communication to Mr. Douglas, the communication cannot support her defamation claim. *See Clark,* 585 So.2d at 1367, 1371 (affirming summary judgment in favor of former employer where the plaintiff was hired for position despite allegedly defamatory communication and suffered no economic loss). Based on the foregoing, the court finds that Wal–Mart's motion for summary judgment is due to be granted concerning Ms. Hayes' claims that the communication by Mark is defamatory.

### CONCLUSION

In accordance with the foregoing discussion and analysis, the court finds that defendant Wal–Mart Stores, Inc.'s motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.