I dissent. I believe Forrester's submission in opposition to the station's motion for summary judgment presented substantial evidence creating material questions of fact on all the elements of a defamation action against a media defendant by a private-figure plaintiff: (1) publication (2) of a false and defamatory statement (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury.
The first element, publication, is not disputed. The majority focuses only on the second element. It holds that the evidence submitted by the station in its motion for summary judgment established that the broadcast was neither false nor defamatory. I disagree.
I have watched the uncut tape of the baseball game shot by the station's photographer Joe Rogers, as well as the edited version of the tape broadcast by the station. The uncut tape shows Forrester's young son being tagged out at base, snatching off his batting helmet, and storming off the field. The tape then shows Forrester intercepting his son, in the middle of what appears to be a temper tantrum, and slapping the child. The edited version of the broadcast, however, omits the son's earlier conduct and shows only the slapping incident. The broadcast is, therefore, fundamentally false and misleading because it does not include the events leading up to the slapping incident. *Page 27 
Forrester maintains that he slapped his son because the boy was having a temper tantrum, because he was displaying unsportsmanlike conduct, not because he was called out at base. The broadcast, however, implies that Forrester struck the child because the child made an error in play and that Forrester was thereby "putting pressure on the child to play better." The broadcast states that the boy, who was "already in tears" before being slapped, had a "terrified look" on his face during the encounter with his father. The majority apparently agrees, because it says that "[t]he boy looks scared throughout the episode."
In contrast, Forrester testified that the boy was angry, not scared, and that he was "screaming . . . mad," not crying. My viewing of the tape leads me to believe that Forrester's characterization of the boy's mental state is probably more accurate than the newscaster's characterization (in part because Forrester knows his child and actually dealt with him on the occasion in question), but in the final analysis I think this question, like many others presented in this case, presents a material question of fact for a jury to resolve.
Deciding that the broadcast dealt with "a matter of public concern" (and therefore that Forrester was required to prove its falsity), the majority portrays the subject of the broadcast in the following rather innocuous terms: "whether adults are putting too much pressure on children in sports, emphasizing to five- and six-year-olds the importance of winning over the importance of enjoying the game and developing good sportsmanship." 709 So.2d at 26. I agree that that topic could be a matter of public concern. However, the majority's description of the subject of the broadcast is incomplete and misleading. The topic of the broadcast is more accurately described (in the words of the broadcaster) as follows: Have parents "lost it" or "gone nuts," over their children's sporting activities, and "are [they] willing to go to extremes" — sometimes by abusing their children — "to win at all costs"?
The majority does not describe the topic of the broadcast in terms of child abuse because to do so would give credence to Forrester's contention that "[t]he broadcast as a whole charged him with child abuse." The majority decides that that contention is not supported by the evidence. It states that "[a] close review of the broadcast reveals that it never charges Forrester with anything." 709 So.2d at 25. I disagree.
The broadcast includes a statement by a Dr. Vaughan, identified as a child psychologist, who, when told of the Forrester slapping episode (but without having viewed the tape of the episode), says "you don't strike kids, and if you dothat's abuse." (Emphasis added.) I believe that statement, alone, "charges Forrester with abuse."
Dr. Vaughan's statement is not the only reference to child abuse in the broadcast. Throughout the segment, the newscasters returned to the subject of child abuse. Birmingham Barracudas quarterback Matt Dunigan was interviewed during the broadcast. He said:
 "People are too competitive, and I think it stems from the parents. And the kids get all tight, and then that's when you see a little kid breaking down, because he knows he's, you know, going to get a butt whipping when he gets home because, you know, they didn't win or he didn't do his job right or something."
(Emphasis added.) During the broadcast, DHR child abuse hotline numbers were displayed on the screen and viewers were encouraged to call to report child abuse. Of course, the station never said, "John Forrester is guilty of child abuse," but "the reasonable inferences to be drawn must be determined by [viewing the broadcast] as a whole." Turner v. Devlin,174 Ariz. 201, 208, 848 P.2d 286, 293 (1993) (defamatory character of statements in a letter must be determined by reading the letter in its entirety).
If the subject of the broadcast is viewed as parentalabuse of children for poor athletic performance (a characterization that, I believe, a fair viewing of the edited story compels), then I agree that that topic, too, is a matter of public concern. However, as Forrester's undisputed testimony indicates, he did not slap his son because of the boy's poor athletic performance; he reprimanded the *Page 28 
boy for being a bad sport and throwing a temper tantrum.
Whether the allegedly defamatory speech involves a matter of public concern is a question of law. Ex parte Rudder,507 So.2d 411, 416 (Ala. 1987). Although I do not think that slapping a child is the best way to deal with misbehavior, I do not believe that the parental reprimand depicted in this broadcast is a matter of public concern.
 "The boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis. Generally, a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published."
Williams v. Continental Airlines, Inc., 943 P.2d 10, 17
(Colo.App. 1996). Historically, parents (and those standing in locoparentis) have had the right to discipline their children by means of reasonable and moderate corporal punishment. SeeCarroll v. State, 370 So.2d 749, 759 (Ala.Crim.App.), cert.denied, 370 So.2d 761 (Ala. 1979)("the law authorizes a parent to administer such corporal punishment as the misconduct of the child seems to warrant"). See also State Dep't of HumanResources v. Funk, 651 So.2d 12, 19 (Ala.Civ.App. 1994) ("Paddling recalcitrant children has long been an acceptable method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children"); Alabama State Tenure Comm'n v. Birmingham Bd. ofEduc., 500 So.2d 1155, 1158 (Ala.Civ.App. 1986) ("An attempt should be made to confer with and secure the cooperation of the student's parent before corporal punishment is administered, but this is not mandatory"). Unless we are prepared to abolish a parent's right to use corporal punishment, then I think we must concede that the reprimand depicted in this broadcast was essentially a private matter and not a matter of public concern.
Because I believe Forrester's reprimand of his child was essentially a private matter, and not a matter of public concern, I do not think Forrester had the burden of proving that the broadcast was false. The station cannot have it both ways. It cannot argue, on the one hand, that it did not label Forrester as a child abuser and then contend, on the other hand, that, because the public has an interest in parental abuse of children, its broadcast was on a matter of public concern, and, therefore, Forrester had the burden of proving the story false. In my opinion, the station transformed what was essentially a private matter into a matter of public concern by its own sensationalistic reporting.
 "Presumably, the news media generally publish and broadcast only matters that the media believe are of public interest, and the media defendant in every defamation action would therefore argue that the communication was a matter of public interest."
Brown v. Kelly Broadcasting Co., 48 Cal.3d 711, 725,771 P.2d 406, 413, 257 Cal.Rptr. 708, 715 (1989).
Nevertheless, even assuming that the broadcast was on a matter of public concern and that Forrester had the burden of proving the broadcast false, I believe that Forrester's submission in opposition to the station's motion for summary judgment presented substantial evidence of falsity. Forrester testified that he did not slap his child to punish him for being called out or to pressure him to win the game. That testimony creates an issue of fact as to whether Forrester's being featured by the station as a parent who "put too much pressure on his child to excel in sports" was false.
Furthermore, I believe that Forrester's actions did not, as a matter of law, amount to child abuse under either §26-16-2(a)(2), Ala. Code 1975, or § 26-15-3, Ala. Code 1975. The former section defines "child abuse" as:
 "Harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through non-accidental physical or mental injury. . . ."
The latter section provides:
 "A responsible person, as defined in Section 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 *Page 29 
years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
The station argues that its broadcasts contained only theopinions of the broadcaster and the persons interviewed and that because those opinions were upon a matter of public concern they are entitled to full constitutional protection. However, a television station "has no constitutional right to repeat false statements simply because they were made . . . on a matter of public concern." WKRG-TV, Inc. v. Wiley,495 So.2d 617, 619 (Ala. 1986), cert. denied, 479 U.S. 1088,107 S.Ct. 1294, 94 L.Ed.2d 150 (1987). In Deutcsh v. Birmingham Post Co.,603 So.2d 910 (Ala. 1992), cert. denied, 506 U.S. 1052,113 S.Ct. 976, 122 L.Ed.2d 130 (1993), our supreme court stated:
 " '[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.' Milkovich [v. Lorain Journal Co.], 497 U.S. [1,] at 20, 110 S.Ct. [2695,] at 2706, [111 L.Ed.2d 1
(1990)], citing [Philadelphia Newspapers, Inc. v.] Hepps, 475 U.S. 767, 106 S.Ct. 1558[, 89 L.Ed.2d 783 (1986)]."
Deutcsh, 603 So.2d at 912. When a videotape does not accurately depict what occurred, there is a "provably false factual connotation." See People for Ethical Treatment of Animals v.Bobby Berosini, Ltd., 111 Nev. 615, 895 P.2d 1269, 1272-73
(1995).
The station's narrative summary of the facts in support of its motion for summary judgment contained the following comment by a viewer who had seen the program:
 "The child did not start throwing a tantrum until after he was slapped in the face, and I'm amazed that no one jumped over the fence and slapped that man in the face for doing that."
The foregoing comment supports Forrester's contention that improper editing of the tape resulted in a false depiction of what occurred.
"[S]tatements of opinion are actionable when 'they imply a false assertion of fact.' Milkovich, 497 U.S. at 18-19,110 S.Ct. at 2706." Turner v. Devlin, 174 Ariz. at 208,848 P.2d at 293. In this case, Dr. Vaughan's statement that "you don't strike kids, and if you do that's abuse," is, without question, an assertion of fact. Compare Turner v. Devlin, supra.
In Turner, the Arizona Supreme Court was called upon to decide whether a letter written by a school nurse, accusing a law enforcement officer of conduct "bordering on police brutality," was defamatory. The nurse wrote the letter to protest the officer's gruff and insensitive treatment of a student who was a suspected victim of child abuse. The court determined that the letter was not defamatory because, it determined, the letter writer's use of the term "police brutality" was, in effect, rhetorical hyperbole that referred to the officer's "demeanor" rather than his "physical conduct." The court stated, however, that "if [the allegedly defamatory] statement could reasonably be interpreted as accusing [the officer] of physically abusing the victim, we would have a different case." Turner, 174 Ariz. at 208, 848 P.2d at 293.
Dr. Vaughan did just that here; he accused Forrester of physically abusing his son. Vaughan's "opinion" was not only an assertion of fact but a false assertion of fact. A parent's use of corporal punishment does not make him a child abuser.
The third element Forrester was required to prove is that the defamatory statements were "of and concerning" him. The station argued that this element was not present because Forrester's face was "clouded over" during the broadcast and he was not identifiable. Forrester countered that argument with the testimony of several witnesses who had seen the broadcast and recognized him.
Section 580B, Restatement (Second) of Torts (1976), states that a private plaintiff suing a media defendant for defamation must prove that the defendant was negligent in publishing the alleged defamatory statement. In Mead Corp. v. Hicks,448 So.2d 308 (Ala. 1983), our supreme court adopted the negligence standard embodied in § 580B. Forrester was therefore required to prove, as the fourth element of his defamation claim, that *Page 30 
the station was negligent in airing its broadcast. InHicks, the court held:
 "[D]efendants who make false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff. In determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account the thoroughness of the check that a reasonable person would make before publishing the statement, the nature of the interests that the defendant was seeking to promote in publishing the statement, and the extent of damage to which the statement exposed the plaintiff's reputation. See the comments following Restatement (Second) of Torts § 580B."
Mead Corp. v. Hicks, 448 So.2d at 312 (emphasis added).
The station argued that it adhered to the standard of checking its story for accuracy because, it claimed, its reporters attempted to reach Forrester before the broadcast was aired, but were unable to do so. The reporters stated that they telephoned Forrester during the daytime hours when, they conceded, he would have been at work. They did not state whether they reached an answering machine, or left a message, when they dialed Forrester's telephone number. Forrester testified that, although he never heard from the station before the broadcast, he was aware (through officials at the Dixie Youth Baseball League) that the television reporters were trying to contact him. He did not contact the station because, he said, his attorney advised him not to. Based on the foregoing testimony, I believe there is a material question of fact as to whether the station was negligent in broadcasting its story.
The United States Constitution and the Alabama Constitution specifically reserve to the people important rights that could not survive without a free press to report and expose the violation of those rights. The awesome right of the press to report carries with it the heavy responsibility of the press to ensure that it reports the truth.
From the evidence presented in opposition to the motion for summary judgment, I think a jury would be authorized to conclude that the station made only a half-hearted attempt to talk to Forrester in order to confirm or to deny its version of the story. A jury could also find, from the station's possession of the uncut tape and the station's slipshod attempt to reach Mr. Forrester before it aired the broadcast, that the station knew Forrester's son was misbehaving before he was slapped and that the station did not want to talk to Forrester to learn the truth because the truth would have stopped the broadcast with the childabuse theme.
Forrester clearly established the fifth and final element of his cause of action: that he suffered injury as the result of the station's conduct. He presented evidence as to the impairment of his reputation and as to mental anguish. He also presented evidence that, after the broadcast, his employer discussed with him the advisability of changing job responsibilities because the employer thought it would be better if Forrester had no contact with the public in the aftermath of the broadcast.
I would reverse the summary judgment for the station and remand the cause for trial.